196 N.J. Super. 372 (1984)
482 A.2d 951
PATRICIA M. MALEWICH, PLAINTIFF,
v.
LASZLO ZACHARIAS, JR., DEFENDANT-THIRD PARTY PLAINTIFF-APPELLANT,
v.
JON AUTY AND MARC ALLEN CHASE, THIRD PARTY DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted September 17, 1984.
Decided October 15, 1984.
*373 Before Judges McELROY, DREIER and SHEBELL.
Edward F. Duschock, attorney for appellant (Edward F. Duschock, on the brief).
Breslin & Breslin, attorneys for respondent Jon Auty (Charles Bergamo, on the brief).
*374 Klein, Chapman, Di Ianni, Greenberg, Henkoff & Siegel, attorneys for respondent Marc Allen Chase (Isaac Henkoff, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendant, Laszlo Zacharias, Jr., has appealed[1] from an order of the Law Division dismissing his third-party complaint against Jon Auty and Marc Allen Chase, for "failure to state a claim upon which relief can be granted." Patricia Malewich had been represented by Zacharias in a matrimonial action in which she was the plaintiff. She discharged him and later filed this legal malpractice action against him. Zacharias in turn filed the third-party action against Auty and Chase. Auty represented plaintiff's ex-husband, Robert Malewich, in the matrimonial action; Chase was retained to represent plaintiff in the matrimonial proceedings after Zacharias was discharged.
The malpractice complaint alleges that defendant failed to appear for trial or notify plaintiff of her trial date in the divorce action and, as a result of her nonappearance, her ex-husband obtained a judgment against her in the sum of $23,136.50. After the entry of that judgment and Zacharias was dismissed, plaintiff retained Chase who attempted to vacate the judgment and negotiated a settlement for $7,500. Chase's law firm thereafter instituted the malpractice suit against defendant.
The divorce was granted based upon plaintiff's ex-husband's counterclaim to which a claim for divorce was added by motion granted November 22, 1982. It appears that Zacharias received *375 a notice dated November 11, 1982 establishing a trial date of January 5, 1983. Neither he nor his client appeared and the court proceeded to hear her husband and his counsel. On January 18, 1983 the trial judge signed an order dissolving the marriage, equally distributing the parties' assets of $39,401, directing the husband's jewelry to be returned to him and assessing $3,000 damages plus interest against plaintiff on a tort counterclaim. Plaintiff claims that had Zacharias properly represented her she would have been present to refute all claims that she was indebted to defendant and even could have shown that he was indebted to her. Zacharias claims that her new attorney acted negligently in failing to vacate the judgments entered against plaintiff and in settling the suit for $7,500.
We find no merit in the third-party complaint against Chase, whose representation commenced after Zacharias' dismissal. When assessing the possibilities of obtaining a vacation of the original judgment, he was responsible solely to his client, who has not complained about that settlement. Zacharias can claim the benefit of this settlement, since the damages for plaintiff's pecuniary loss will be limited as a result of Chase's efforts.
We determine that third-party defendant Chase owed no duty to Zacharias under the facts of this case. We have reviewed the standards of Wytupeck v. Camden, 25 N.J. 450, 461-462 (1957):
"Duty" is not an abstract conception; and the standard of conduct is not an absolute. Duty arises out of a relation between the particular parties that in right reason and essential justice enjoins the protection of the one by the other against what the law by common consent deems an unreasonable risk of harm, such as is reasonably foreseeable, Lokar v. Church of the Sacred Heart, 24 N.J. 549 (1957). In the field of negligence, duty signifies conformance "to the legal standard of reasonable conduct in the light of the apparent risk"; the essential question is whether "the plaintiff's interests are entitled to legal protection against the defendant's conduct." Prosser on Torts (2d ed.), section *376 36. Duty is largely grounded in the natural responsibilities of social living and human relations, such as have the recognition of reasonable men; and fulfillment is had by a correlative standard of conduct.
We have applied these standards and, finding no duty existed, agree with the trial court's determination that the third-party complaint against Chase did not state a claim upon which relief could be granted.
Third-party defendant Auty, however, stands in a different position with respect to Zacharias. Zacharias avers that he would have appeared on the trial date but that he had not, relying on Auty's representation that he would call Zacharias if the case were not adjourned. Specifically:
Mr. Auty said he will speak with the Court and call me right back, if the case was going to be moved, otherwise, it would be adjourned to a new date. I stayed in my office all day and Mr. Auty did not call me back.
A transcript of the proceedings before the trial judge indicates that the default was taken against plaintiff and defendant was allowed to proceed on this counterclaim upon a representation by Mr. Auty that plaintiff's attorney would not appear.
If Zacharias were negligent in his handling of the divorce action and Auty capitalized on this negligence by misrepresenting to the trial court what had transpired  so that plaintiff was foreclosed from presenting substantial defenses to the counterclaim  Auty could and should be held responsible. Auty claims that he owed no duty to plaintiff or her attorney. He overlooks, however, the Disciplinary Rules requiring him to make only true statements to a court under DR 7-102(A)(2), (5) and (7).[2] In addition, Auty's proceeding on an ex parte basis, allegedly without notice to Zacharias, may also have violated DR 7-106(C)(5). R. 1:14 provides that the Disciplinary Rules shall "govern the conduct of the members of the bar."
*377 Unlike the complaint of Zacharias as to Chase, there is a time frame within which Zacharias' actions were dependent on Auty's good faith. The standards quoted earlier in the Wytupeck case apply. A member of the bar should well understand that an adversary might reasonably rely upon representations made to him, and thus a duty to the adversary can rise. A breach of that duty can render the attorney liable to such an adversary for all or part of a claim advanced by the adversary's client in a malpractice action. R. 4:8-1(a).
In other situations an attorney may be liable to a person who does not stand in an attorney-client relationship. See Stewart v. Sbarro, 142 N.J. Super. 581, 593 (App.Div.), certif. den. 72 N.J. 459 (1976); Ackerman v. Lagano, 172 N.J. Super. 468, 470-472 (Law Div. 1979). Cf. H. Rosenblum, Inc. v. Adler, 93 N.J. 324, 334 (1983).
In a different setting, the Supreme Court has mandated that "in every contract there is an implied covenant of good faith and fair dealing." Onderdonk v. Presbyterian Homes of N.J., 85 N.J. 171, 182 (1981). If such a standard is to be applied in the market place where specific codes of ethics do not govern the behavior of most participants, how much stronger should be the application of such a principle between members of the bar? Cf. In re Hurd, 69 N.J. 316, 330 (1976); In re Gavel, 22 N.J. 248, 265 (1956). Although we realize that the potential liability postulated here is novel, it should come as no surprise to any attorney who has read the Disciplinary Rules that a misrepresentation made to another member of the bar, the reliance upon which has subjected such member to potential civil liability, can result in an award of damages.
For these reasons we reverse the dismissal of the third-party complaint against third-party defendant Auty and remand the matter to the Law Division for trial. We do not retain jurisdiction.
NOTES
[1] We note that defendant Zacharias filed a notice of appeal to invoke the jurisdiction of this court, notwithstanding the non-final nature of the order which he sought to have us review. Although we have the authority to dismiss this appeal, R. 2:2-3(a)(1), we choose instead to treat the notice as a motion for leave to appeal which we grant nunc pro tunc, R. 2:2-4.
[2] Reference is made to the Disciplinary Rules applicable when the attorney's actions occurred. Compare the Rules of Professional Conduct, Rules 1.2(d); 3.3; 3.4 and 4.1(a) (effective September 10, 1984).