281 N.J. Super. 50 (1995)
656 A.2d 835
SHERWOOD BAXT AND SAIDA BAXT, PLAINTIFFS-APPELLANTS,
v.
GERALD A. LILOIA AND ANTHONY J. SYLVESTER, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 23, 1995.
Decided March 13, 1995.
*51 Before Judges DREIER, WEFING and BRAITHWAITE.
Helen Davis Chaitman argued the cause for appellants (Ross & Hardies, attorneys; Ms. Chaitman, Sean M. Sullivan and Kelly J. Bugle, on the brief).
Michael R. Cole argued the cause for respondents (Riker, Danzig, Scherer, Hyland & Perretti, attorneys; Jeffrey J. Miller and Harold L. Kofman, on the brief).
The opinion of the court was delivered by WEFING, J.A.D.
This case is a companion matter to another decided today, The Summit Trust Company v. The Grove Mercantile Center, et al. Understanding the issues presented by this appeal requires reference to the record of that matter, a foreclosure action premised upon a default on a certain construction loan from The Summit Trust Company (Summit) to The Grove Mercantile Center (Grove).
Plaintiff Sherwood Baxt was a general partner in Grove; he and Saida Baxt were defendants in the foreclosure action. Other Grove partners and foreclosure defendants were Paul Hartman and Paul Baxt. Among the issues presented in the foreclosure action was a counterclaim asserted by defendants against Summit on a theory of lender liability.
The foreclosure complaint was filed in March 1991. After a period of discovery, the attorneys for Summit filed a motion for summary judgment. Within the motion, Summit contended it and Grove had negotiated a modification agreement which extended the original loan for one year and that in conjunction with the modification agreement, Grove had executed a release of all claims against Summit. Such a release, if given, removed any basis for Grove's counterclaim on a lender liability theory. Summit's attorneys, in preparing the motion for summary judgment, included, within the moving papers, a copy of the release executed by Grove *52 general partner, Paul Hartman. Mr. Hartman's signature was neither witnessed nor notarized and the document could not be recorded. N.J.S.A. 46:16-2.
The attorneys for Grove in the foreclosure action were perplexed when they received this motion. During discovery prior to Summit's motion being filed, Grove's attorneys inspected the bank's documents and noted that, while Summit's files contained a copy of the modification agreement executed on behalf of the bank, the files did not contain a copy of the modification agreement executed by Grove. Mr. Hartman informed Grove's attorneys that, although the signature on the document in the moving papers looked like his, he had no recollection of either signing the document or giving it to the bank. In addition, Grove's attorneys noted that Summit's answer to Grove's counterclaim made no mention of a release.
Upon receipt of the motion, Grove's attorneys commenced discovery on the limited issue of how the executed copy of the modification agreement got into the bank's file. They conducted depositions of two bank representatives; the depositions of each individual took two days to conclude. We note merely that the depositions did not proceed entirely smoothly; we do not find it necessary to set forth the extensive colloquy between counsel.
At least one deposed witness recalled receiving a faxed copy of the modification agreement signed by Mr. Hartman. The document annexed to the summary judgment, however, bore no indication of having been faxed. Furthermore, Mr. Hartman's telephone bills contained no record of such a fax.
Before resumption of the final day of deposition on this issue, Grove's attorney reviewed Grove's entire file which it had earlier produced to the bank in discovery. During the review, she discovered a misfiled folder which contained the original modification agreement and three copies, all executed by Mr. Hartman.
During that final day of depositions, Summit's attorneys admitted they obtained the executed copy of the modification agreement *53 attached to Summit's motion for summary judgment from the Grove files during document inspection and directed bank personnel to place it within the bank's files.
Thereafter, plaintiffs filed this two-count complaint; defendants are the attorneys who represented Summit in the foreclosure action. The first count sought damages for tortious concealment of evidence and the second was premised on an alleged breach of the Rules of Professional Conduct. The complaint was consolidated with the pending foreclosure action in Hudson County.
In December 1992, defendants moved to dismiss the complaint. The application was denied as to the first count and granted as to the second. The Chancery judge who heard defendants' motion concluded that the question whether defendants' conduct constituted an ethics violation was a collateral issue over which the court did not have "primary jurisdiction;" he thus dismissed the second count.
Thereafter, the foreclosure action was settled and the matter, on which the first count remained outstanding, was transferred to the Law Division in Bergen County where it had been originally filed. The foreclosure action's settlement terms have not been made known to us.
The parties later filed cross-motions for summary judgment on the remaining count. After oral argument, the trial judge granted defendants' motion for summary judgment and denied plaintiffs'. He set forth his reasons in a comprehensive ten-page letter opinion which concluded that plaintiffs failed to show they justifiably relied, to their detriment, upon the signed copy of the modification agreement attached to Summit's summary judgment motion. Viviano v. CBS, Inc., 251 N.J. Super. 113, 597 A.2d 543 (App.Div. 1991), certif. denied 127 N.J. 565, 606 A.2d 375 (1992); DSK Enterprises, Inc. v. United Jersey Bank, 189 N.J. Super. 242, 459 A.2d 1201 (App.Div.) certif. denied 94 N.J. 598, 468 A.2d 232 (1983). From those two determinations in defendants' favor, plaintiffs appeal to this court. We affirm.
*54 We turn first to whether the second count in plaintiffs' complaint stated a cause of action. Both lower courts which considered this matter were obviously troubled by defendants attaching, to the bank's summary judgment motion, the executed copy of the modification agreement obtained through normal discovery without noting the source of the document. This is not the appropriate forum to determine the propriety of those actions and we express no opinion on them.
Plaintiffs rely upon three reported New Jersey opinions for their proposition that a breach of the Rules of Professional Conduct by one attorney during the course of litigation may give rise to a cause of action for damages for the attorney's adversary.[1] Plaintiffs refer to Malewich v. Zacharias, 196 N.J. Super. 372, 482 A.2d 951 (App.Div. 1984), Albright v. Byrnes, 206 N.J. Super. 625, 503 A.2d 386 (App.Div. 1986) and Tedards v. Auty, 232 N.J. Super. 541, 557 A.2d 1030 (App.Div. 1989). All of these cases, in our view, are substantively distinguishable.
Malewich v. Zacharias, supra, presented a claim by one attorney against his adversary in a divorce suit. The defendant Zacharias represented Malewich as a plaintiff in a matrimonial action. She sued him for legal malpractice when he did not appear on the trial date. Her then-husband and his attorney, Auty, did appear. The trial court heard testimony, signed an order which dissolved the marriage, provided for equitable distribution and imposed damages against the plaintiff. Zacharias joined the attorney who represented the husband in the divorce proceeding as a third-party defendant in the legal malpractice action. Zacharias asserted that he did not appear on the trial date because Auty told Zacharias he would call Zacharias if the case *55 were proceeding to trial that day. Auty did not call him so he remained in his office. The transcript of the divorce matter showed that Auty represented to the matrimonial judge that Zacharias would not appear to contest any of the issues. In reversing the trial court's dismissal of Zacharias's third-party complaint against Auty, and remanding the matter to the Law Division for trial, this court stated:
A member of the Bar should well understand that an adversary might reasonably rely upon representations made to him, and thus a duty to the adversary can rise. A breach of that duty can render the attorney liable to such an adversary for all or part of a claim advanced by the adversary's client in a malpractice action.
[Malewich v. Zacharias, 196 N.J. Super. at 377, 482 A.2d 951].
Here, however, plaintiffs have not asserted any negligence on the part of their attorneys in handling the foreclosure litigation and their attorneys have not been exposed to a claim for damages. Plaintiffs' counsel are not seeking to be made whole in the event liability were imposed upon them; plaintiffs, rather, seek to assert a direct claim against the attorneys who represented their adversary in prior litigation.
Similarly, Albright v. Byrnes, supra, was a claim of negligence against an attorney for his handling of a loan from a decedent to his nephew who held a power of attorney. Within the course of our opinion, this court noted that ethical standards "set the minimum level of competency which must be displayed by all attorneys." Albright v. Byrnes, 206 N.J. Super. at 634, 503 A.2d 386.
Finally Tedards v. Auty, supra, was a suit for damages by a former husband against the attorney who represented his ex-wife in post-judgment matrimonial litigation. He asserted the attorney should be held liable for his damages for abuse of process in obtaining and seeking to enforce a writ of ne exeat.
Most recently, in Petrillo v. Bachenberg, 263 N.J. Super. 472, 623 A.2d 272 (App.Div.), certif. granted, 134 N.J. 566, 636 A.2d 523 (1993), this court concluded that a buyer of real estate may have a cause of action against the attorney for the seller who provides misleading information which concerns the transaction's subject.
*56 None of these cases, however, have involved a cause of action for damages by an adversary premised solely on an attorney's alleged disregard of his ethical responsibilities. We decline to find such a duty, particularly in the context of this case.
Plaintiffs here seek to recover as damages the additional legal costs incurred to discover the source of the executed copy of the modification agreement submitted to the court. The Baxts, however, as defendants within the foreclosure action where they incurred extra costs, have settled the foreclosure litigation. The record is, for whatever reason, entirely silent on whether the costs were addressed in any manner in the settlement terms.
More importantly, however, we are satisfied the fundamental purpose of the Rules of Professional Conduct is to regulate attorney conduct vis-a-vis clients and the court. The duties imposed by the Rules of Professional Conduct run fundamentally to the court and the client. Attorneys who breach the rules are liable to the court for misconduct, to their clients for the harm which flows from the unethical conduct, and are further subject to Supreme Court discipline. Indeed, a question arises whether a conclusion that a non-client may recover damages from an attorney, for breach of that attorney's ethical responsibilities, would not impinge upon the exclusive power of the Supreme Court to discipline attorneys. Cf. McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 549, 626 A.2d 425 (1993).
The underlying purpose of the Rules of Professional Conduct, moreover, is not to serve as a source of litigation, but rather to express the fundamental standards required to uphold the integrity of our legal system. The interests the Rules of Professional Conduct seek to vindicate are the interests of society in assuring a legal system based on integrity and honesty, not private interests.
A similar view was expressed by the New Mexico Supreme Court in Garcia v. Rodey, Dickason, Sloan, et al, 106 N.M. 757, 750 P.2d 118 (1988). In that case, the Court stated:
The Code of Professional Responsibility was not intended to create a private cause of action since its intended remedy is the imposition of disbarment, suspension or *57 reprimand of the offending attorneys. The public can avail itself of other remedies against unprofessional lawyers. And, finally, to expose attorneys to actions for breach of ethical duties imposed by the codes would be contrary to the public interest in affording every citizen the utmost freedom of access to the courts.
[Garcia, 750 P.2d at 123].
See also, Brooks v. Zebre, 792 P.2d 196 (Wyo. 1990) ("The clear rule is that no private cause of action in favor of a non-client can be found attributable to violations of the disciplinary rules relating to attorneys.") Brooks, 792 P.2d at 201; L & H Airco, Inc. v. Rapistan Corp. 446 N.W.2d 372 (Minn. 1989). ("... an ethical duty of disclosure is not intended to run to the personal benefit of an attorney's adversary. Rather, the duty of disclosure is for the benefit of the tribunal and is an obligation imposed upon an attorney to aid the administration of justice.") L & H Airco, 446 N.W.2d at 380; Bob Godfrey Pontiac, Inc. v. Roloff, 291 Or. 318, 630 P.2d 840 (1981) ("Other courts have also addressed the question whether an attorney's violation of ... the Code of Professional Responsibility (CPR) gives rise to a private cause of action for damages. All of the courts that have directly considered this question have held that it does not.") Bob Godfrey Pontiac, 630 P.2d at 847; Bickel v. Mackie, 447 F. Supp. 1376 (N.D.Iowa 1978), aff'd 590 F.2d 341 (8th Cir.1978).
We recognize, moreover, that we are an intermediate court. As such, we are loath to create a new cause of action with such far-reaching implications.
Finally, we consider it appropriate to address some of the concerns expressed in the concurring opinion. We do not quarrel with the proposition that the Rules of Professional Conduct set forth an appropriate standard of care by which to measure an attorney's conduct. The proposition is well established. See, e.g., Albright v. Byrnes, supra. These defendants, however, were not being sued on a negligence theory and plaintiffs do not point to the Rules of Professional Conduct as a yardstick by which to determine the adequacy of defendants' conduct. The only claim asserted against defendants in the second count of plaintiff's complaint is that they violated the Rules of Professional Conduct. *58 It has been plaintiffs' position throughout this appeal that that, without more, gives plaintiffs a cause of action for damages against defendants. That is the narrow issue which is before us and that is the narrow issue we have addressed in deciding this matter. We are satisfied the trial court correctly granted defendants' motion to dismiss the second count of this complaint.
Plaintiff's other theory of liability against defendants was described by them as one for tortious concealment of evidence. As to this, we affirm substantially for the reasons expressed by Judge Doyne in his comprehensive letter opinion of September 20, 1993.
Affirmed.
DREIER, P.J.A.D. (concurring).
I concur with the result reached by the majority primarily because of plaintiffs' settlement of the underlying litigation with the Summit Trust Company. In view of this settlement, without reservation of any claim for costs occasioned by the attorneys' actions, as described in the majority opinion, plaintiffs are precluded from seeking damages for what I believe could otherwise be a viable cause of action.
The facts are stated in the majority opinion. I will only briefly restate them. During discovery, the bank's attorneys marked for copying a number of documents from the files of The Grove Mercantile Center ("Grove"), the foreclosure defendant. Without the knowledge of Grove, the banks attorneys added a signed but apparently undelivered modification agreement to the bank's files to provide substantiation to its claim that the signed document had previously been received. The document was then the centerpiece of the bank's summary judgment motion against the foreclosure defendant. This I see to be at least an implied representation by the attorneys that the document presented to the court was from the bank's files.
Fortunately for the foreclosure defendant, its attorneys recalled that the copy of the agreement in the bank's files when examined *59 by them had not been signed by their client. The foreclosure defendant was nevertheless forced to assemble proofs that the agreement had never been delivered to the bank. Thus the potential tort damages claimed by plaintiffs could be the cost of the additional discovery until the source of the document came to light. But these were real damages, and had there been no settlement, I would not have precluded plaintiffs from seeking recompense.
I see little difference between the liability for spoliation of evidence and the alleged acts of defendants. Cf. Viviano v. CBS, Inc., 251 N.J. Super. 113, 126, 597 A.2d 543 (App.Div. 1991), certif. denied, 127 N.J. 565, 606 A.2d 375 (1992). I assume that the attorneys' motivation was to substantiate the credibility of their witness who stated that the signed document had in fact been returned to the bank by fax transmission but could no longer be found. But as much as an attorney may believe his or her client, the attorney may not violate the Rules of Professional Conduct in order to bolster that client's credibility in the eyes of others.
In the foreclosure case, the issue was vital. The bank contended that it would not have made additional loans if the document, already signed by the bank, had not been signed by Hartman and returned to the bank. Plaintiffs and Hartman contended, however, that the terms were not acceptable and that the signed copies in Grove's files were not to be delivered to the bank because substantial negotiations for the amendment of terms had not been concluded. The signatory, Mr. Hartman, could not recall ever delivering the document to the bank, yet he was faced with a copy of the agreement bearing his signature, allegedly found in the bank's files.
The bank's argument that the document must have been received by it or else it would not have proceeded with the incorrect loan arrangements, has a potential flaw. There are other possibilities. We can speculate that the bank could have proceeded on an incorrect assumption that the accepted agreement had been returned, or that the copies of the agreement in the files, signed by *60 the bank alone, may have been mistaken by some bank officer for the accepted agreement.
As we noted more than a decade ago in Malewich v. Zacharias, 196 N.J. Super. 372, 377, 482 A.2d 951 (App.Div. 1984), there are situations in which "an attorney may be liable to a person who does not stand in an attorney-client relationship." We concluded that "it should come as no surprise to any attorney who has read the Disciplinary Rules that a misrepresentation made to another member of the bar, the reliance upon which has subjected such member to potential civil liability, can result in an award of damages." Ibid. Where the misrepresentation is not made to another member of the bar, but rather consists in supplementing evidence upon which the attorneys knew or should have known that the court potentially would rely, and their adversaries would be forced to expend time and money to disprove, I see no impediment to civil liability for any damages directly flowing from the attorney's actions. Cf. Stewart v. Sbarro, 142 N.J. Super. 581, 593, 362 A.2d 581 (App.Div.), certif. denied, 72 N.J. 459, 371 A.2d 63 (1976). Also, as noted in Tedards v. Auty, 232 N.J. Super. 541, 551, 557 A.2d 1030 (App.Div. 1989): "The duty to represent a client does not shield an attorney from the consequences of offering evidence that he knows is false."
This goes beyond the acts forbidden by the frivolous litigation statute, N.J.S.A. 2A:15-59.1, for which an attorney cannot be held liable. McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 560-563, 626 A.2d 425 (1993). Further, such conduct exceeds the mere frivolous pleading or motion covered by R. 1:4-8. See Berthelsen v. Hall, 194 N.J. Super. 22, 475 A.2d 1275 (App.Div. 1984). In this case, defendants alleged aiding of their client to supplement evidence which was expected to be presented to the court potentially violated RPC 3.3(a)(4). The failure to disclose the method by which the bank's files were augmented was an incipient violation of RPC 3.3(a)(5). The attorneys' actions were also possible violations of RPC 3.4(a) and (b), since after the *61 bank's files were allegedly supplemented, the evidence was presented to the court.[1]
The legal basis of plaintiff's claim requires no novel analysis, since it is nothing more than a description of professional negligence which we call malpractice. There must be a duty owed, a violation of an appropriate standard of care, causation and damages. Prosser and Keeton on Torts (5th ed. 1984) § 30. Our case law has recognized, and in fact the Rules of Professional Conduct dictate duties owed not only to an attorney's client, but also to third-parties such as the court and opposing counsel. Malewich v. Zacharias, supra. Case law has also recognized that such duties also may be owed to the adverse party Stewart v. Sbarro, supra; Tedards v. Auty, supra.
The standard of care applicable to attorneys is defined in many areas of substantive and procedural law requiring particular competence, knowledge, and compliance with statutes of limitation or rules of procedure, and noncompliance can subject the attorney to malpractice damages. In the area of professional ethics, an attorney is governed by the Rules of Professional Conduct which prescribe mandatory obligations to the courts, clients, adversaries, and the public. This codification imposes at least the minimum standards to which an attorney must adhere. It is difficult for me to understand how a duty defined in the Rules of Professional Conduct cannot be considered as defining an attorney's appropriate standard of care or the negligence equation.[2]
A plaintiff next must prove that the attorney's failure to conform to the applicable standard of conduct in discharge of a duty *62 owed to another caused some loss. The proximate cause requirement in this case was amply satisfied because the additional depositions, documentary discovery and record searches were confined to the single issue of locating the source of the fully signed modification agreement, all at some cost to plaintiffs.
It is only the last element, proof of actual damages, that in my opinion causes this claim to fall. As noted at the outset, the global settlement of the foreclosure suit encompassed all claims between the parties. Defendants in this case acted as the bank's agents and it is impossible to tell the elements that went into the settlement which followed so closely at the heels of the foreclosure defendants' discovery of the source of the document.
Given the allegations of this case as described in the majority opinion, I cannot agree with the majority's conclusion that we should follow those states that have found no basis in the disciplinary rules to establish a claim by third parties. I reiterate that in my opinion, it is only the settlement of the bank litigation with its resultant effect upon proof of damages that forestalls a remand for an adjudication of potential liability in this case. Had there been no such impediment, I do not see our imposition of such potential legal liability as creating "a new cause of action with such far reaching implications" as is envisioned in the majority opinion.
Except as herein stated, I otherwise concur with the majority opinion.
NOTES
[1] We have assumed, for purposes of this opinion only, that the conduct at issue did violate the Rules of Professional Conduct. That assumption is required for analysis; clearly, if there were no violation, plaintiffs would have no ground to assert such a cause of action. This assumption, however, is not to be interpreted as a determination that these attorneys did, in fact, violate the Rules of Professional Conduct. As noted, that is an issue for another forum.
[1] As is also noted in the majority opinion, I make no adjudication of these factual issues, since they were not fully presented before us; I only view the claims from the documentary evidence and argument presented to us.
[2] To hold otherwise would, in effect, tell the public that an ethical violation that causes harm to another might be the subject of attorney discipline; but the attorney is otherwise shielded from the harm he or she has caused through unethical conduct.