284 N.J. Super. 221 (1995)
664 A.2d 948
SHERWOOD BAXT AND SAIDA BAXT, PLAINTIFFS-APPELLANTS,
v.
GERALD A. LILOIA AND ANTHONY J. SILVESTER, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 23, 1995.
Decided March 13, 1995.
Remanded July 5, 1995.
Resubmitted July 17, 1995.
Decided September 27, 1995.
*222 Before Judges DREIER, WEFING and BRAITHWAITE.
Helen Davis Chaitman argued the cause for appellants (Ross & Hardies, attorneys; Ms. Chaitman, Sean M. Sullivan and Kelly J. Bugle, on the brief).
Michael R. Cole argued the cause for respondents (Riker, Danzig, Scherer, Hyland & Perretti, attorneys; Jeffrey J. Miller and Harold L. Kofman, on the brief).
Remanded by Supreme Court July 5, 1995.
The opinion of the court was delivered by WEFING, J.A.D.
This matter has been remanded to us pursuant to an order of the Supreme Court of July 5, 1995 "to consider the claim of *223 petitioners that the settlement of the underlying litigation expressly excluded plaintiffs' claims against the attorney defendants." This court did not address that issue in its opinion since it concluded that plaintiffs had failed to state a cause of action in any event. We do not restate the facts of this matter, for they are contained within our original opinion.
Whether plaintiffs sought to exclude claims against the attorney defendants from the settlement of the companion foreclosure action (The Summit Trust Company v. The Grove Mercantile Center, et al, A-1102-93) was not material to this court's decision that plaintiffs did not have a cause of action against these attorney defendants based solely on an allegation that the conduct of these defendants violated the Rules of Professional Conduct. Our colleague has concluded that the apparent attempt by the plaintiffs to preserve a claim against these defendants from the settlement of the underlying mortgage foreclosure action is sufficient to permit this case to go forward. In our view, however, the language plaintiffs inserted into that settlement agreement is immaterial; a party cannot preserve a claim that does not exist. We adhere to the views expressed in the opinion of March 13, 1995.
DREIER, J. (dissenting).
Following the filing of the majority and concurring opinions in this matter, 281 N.J. Super. 50, 58, 656 A.2d 835 (App.Div. 1995), plaintiffs petitioned the Supreme Court for certification. After review, the Supreme Court remanded the matter to this court for our reconsideration of a single issue, namely, "the claim of petitioners that the settlement of the underlying litigation expressly excluded plaintiffs' claims against the attorney defendants, contrary to the suggestion contained in the Appellate Division's opinion."[1]
*224 After the remand from the Supreme Court, we have made a full review of the settlement agreement entered into in the earlier foreclosure action and the express limitations contained in the release signed by plaintiffs in the present case. I realize that the new information does not affect my colleagues' position that an alleged violation of the Rules of Professional Conduct cannot engender civil liability. My disagreement was expressed in my earlier opinion concurring only in the result reached by the majority. From this new material, however, I have concluded that my earlier concurrence with the dismissal of plaintiff's claim should have been a dissent.
The facts of this case are adequately expressed in our earlier published opinion and need not be reiterated in detail here. Suffice it to say that plaintiffs were forced to expend sums for legal fees and costs of discovery as a result of defendants' actions allegedly misrepresenting to the court that a document copied from plaintiff's files during discovery was in fact a part of defendants' client's records.
In my earlier concurring opinion, I stated that plaintiffs' civil claim for breach of the ethical rules provided a legitimate basis for a civil action against the defendant attorneys. I there concluded that the Rules of Professional Conduct impose "at least the minimum standards to which an attorney must adhere." 281 N.J. Super. at 61, 656 A.2d 835. I likened a breach of a duty imposed by the Rules of Professional Conduct to the breach of any other professional standard of care which could be a basis for a malpractice claim. Ibid. Such a claim may be asserted either by the attorney's client or by a foreseeably injured third party. Ibid.
I had found, however, that there was a failure in this case to show a basis for damages. I had assumed that the earlier litigation had been fully settled and that both the foreclosing *225 bank's and the present plaintiffs' attorneys' fees would have been subsumed within that settlement. Id. at 62, 656 A.2d 835.
It now appears that the settlement agreement in the underlying mortgage foreclosure action had been entered into after the present suit against defendants had been filed and was specifically mentioned therein. (In fact, plaintiffs had agreed to indemnify the bank for attorney fees if the bank was called upon to produce witnesses in this suit). Furthermore, the releases signed by plaintiffs expressly excluded the release of the defendants in the present action. The release stated: "Nothing in this Release shall be construed as releasing Gerald A. Liloia, Esq. and Anthony J. Sylvester, Esq. in the action entitled Baxt vs. Liloia."[2] We could liken the settlement in the earlier action to that of one of two drivers in an automobile negligence case. The released driver may have allegedly caused most of the injuries, but rights could well be reserved against another party who allegedly only caused certain specific damage.
The plaintiffs and the bank in this case settled the mortgage foreclosure and related issues. Plaintiffs recognized, however, that there were increased expenses of the case, not attributable to the foreclosing bank, but which were allegedly caused solely by the ethical violations by the bank's attorneys. This was a separate claim, which I would find to be akin to the claim for fees in State *226 Dept. of Environmental Protect. v. Ventron Corp., 94 N.J. 473, 504-505, 468 A.2d 150 (1983) and Dorofee v. Planning Bd. Tp. of Pennsauken, 187 N.J. Super. 141, 144, 453 A.2d 1341 (App.Div. 1982). See also Feldmesser v. Lemberger, 101 N.J.L. 184, 186-189, 127 A. 815 (E. & A. 1925); Katz v. Schacter, 251 N.J. Super. 467, 473-474, 598 A.2d 923 (App.Div. 1991); Hagen v. Gallerano, 66 N.J. Super. 319, 333, 169 A.2d 186 (App.Div. 1961). While the issue giving rise to this claim is not, as in these cited cases, a separate action into which plaintiffs were drawn by defendants' alleged conduct, the portion of the foreclosure action which was necessitated by defendants' alleged conduct was sufficiently separable to warrant recompense. This issue can be separately adjudicated since it has neither been settled nor encompassed within plaintiffs' releases.
I should express one more point concerning the substance of plaintiffs' claims. The last thing that I would wish to see is that attorneys become the subject of actions by clients or adversary parties for discovery or trial decisions, questioned by Monday-morning quarterbacks. Whether a deposition should or should not have been taken, whether questions were properly posed to witnesses, or whether witnesses were called or not, should not be the subject of actions such as this one because of a claim that the trial or preparation for trial was lengthened. Every beginning attorney who may increase the opposing party's legal costs by taking too long to conduct discovery, to ask questions, or by calling an unnecessary witness is not to be the subject of a claim such as the one before us.
An attorney should not be presumptively liable to an adversary even for all deceptive tactics. Many proper trial tactics lead an adversary away from an attorney's real strategy, within the constraints of the Rules Governing the Courts and the Rules of Professional Conduct. Also, the tactic may be proper even if it did not equate with the "average" standard of the profession. Certainly the average cannot be the benchmark below which an attorney's conduct can result in liability. If the average is the *227 halfway point, we would not want to see our courts filled with suits against all but the upper half of our trial bar.
The standard, as in the case of malpractice, is one of reasonableness; and reasonableness, I would find, is defined in the area of ethical conduct by the Rules of Professional Conduct. Such standards are those of professional competence (RPC 1.1), diligence (RPC 1.3), good faith (RPC 3.1), expeditious conduct (RPC 3.2), candor (RPC 3.3) and fairness (RPC 3.4) that define the line between ethical and unethical behavior. I would limit exposure to civil liability by an attorney in favor of the injured adversary to those rare situations where the attorney's conduct oversteps the Rules of Professional Conduct as defined by the Supreme Court.
As there is a proper foundation here for such a claim, and that claim has been properly preserved, I would remand the matter for trial. I therefore modify my concurring opinion in this matter, 281 N.J. Super. at 58, 656 A.2d 835 and respectfully dissent from the majority opinion expressed by my colleagues.
NOTES
[1] The terms of the settlement agreement and releases were not contained in the records submitted to us in the initial appeal. Plaintiffs, however, unsuccessfully moved to supplement the record following our decision. The new information would have, in my opinion, been central to the issue now on remand to us. On reconsideration, it appears to me that we acted too hastily in denying plaintiffs' motion, which, although not expressly stated, implicitly also requested a reconsideration of our decision.
[2] There was no ambiguity in the parties' settlement. Both sides understood that the claims against defendants were reserved. In the foreclosure action, as the negotiations for the settlement neared conclusion, the parties appeared at a motion concerning the payment of fees to a discovery master. Present were plaintiffs' attorneys, the discovery master, defendant Sylvester representing the bank, and counsel for the defendant attorneys. At that time, the trial judge questioned plaintiffs' attorney whether the settlement of the foreclosure action would resolve or make moot a suit against the defendant attorneys for damages. She responded "I don't believe that that's true, your Honor, and the settlement specifically was negotiated directly between the parties, specifically provided that the suit against the lawyers would go forward and that the plaintiffs in that lawsuit would pay any legal fees incurred by the bank in the event that any of the bank's officers were subpoenaed to testify." This representation was not denied by defendants' counsel or by defendant Sylvester personally.