291 N.J. Super. 222 (1996)
677 A.2d 238
ROBERT OLDS, PLAINTIFF-APPELLANT,
v.
DENNIS DONNELLY, DEFENDANT-THIRD PARTY PLAINTIFF-RESPONDENT-CROSS-APPELLANT,
v.
JOE MARAN, THIRD PARTY DEFENDANT-CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 30, 1996.
Decided June 11, 1996.
*224 Before Judges PRESSLER, WEFING and A.A. RODRIGUEZ.
Joe Maran argued the cause for appellant (Maran & Maran, attorneys; Joe Maran, on the brief).
Christopher J. Carey argued the cause for respondent Dennis Donnelly (Tompkins, McGuire & Wachenfeld, attorneys; Mr. Carey, of counsel; Mr. Carey and John P. O'Toole, on the brief).
Diane M. Acciavatti argued the cause for cross-respondent, Joe Maran, (Voorhees & Acciavatti, attorneys; Ms. Acciavatti, of counsel and on the brief).
The opinion of the court was delivered by WEFING, J.A.D.
Plaintiff sued defendant for legal malpractice. The case was tried to a jury, which returned a verdict of $500,000 in plaintiff's favor. The trial court subsequently entered a judgment in favor of defendant notwithstanding that verdict. Plaintiff appeals and we reverse.
On June 27, 1985, Robert Olds underwent hernia repair surgery at the hands of Floyd J. Donahue, M.D., at Elizabeth General Hospital. Olds suffered an infarcted right testicle as a result of that surgery; necrosis set in and the testicle shriveled to the size of a pea.
*225 Less than a month after the surgery, plaintiff consulted with defendant in connection with a possible medical malpractice action against Dr. Donahue and plaintiff signed a retainer agreement. In June 1986, defendant advised plaintiff he could not proceed further with the case unless he received $500 to cover out-of-pocket costs. Plaintiff eventually forwarded that sum.
On June 25, 1987, two days before the statute of limitations expired, the two met at defendant's office. Defendant advised plaintiff that he could no longer represent him. According to plaintiff, defendant offered to prepare a pro se complaint to be filed within the statutory deadline. A pro se complaint was, in fact, prepared and filed in timely fashion. Further, according to plaintiff, defendant said he would have the complaint served upon Dr. Donahue by mail.
The summons was prepared and issued in defendant's name and sent to Dr. Donahue. The wrong address was used, however, and it was returned to defendant's office. In August 1987, defendant sent the summons and complaint to Dr. Donahue at the correct address. The papers were sent certified mail, with the return receipt addressed to plaintiff. For reasons that do not appear on the record, service was not effected.
In 1988, Olds received a notice from the court that the matter was going to be dismissed for lack of prosecution. Plaintiff testified that he then called defendant who said "he would take care of it." In May 1989, the plaintiff received another notice from the court that the matter was going to be dismissed for lack of prosecution.
In June, plaintiff wrote and requested that the case be continued to permit him to obtain legal counsel. A clerk then assisted him in preparing a summons which was then delivered to the Union County Sheriff's department for service on Dr. Donahue in July 1989.
Dr. Donahue forwarded the matter to counsel and in February 1991, Donahue's attorneys filed a motion to dismiss plaintiff's *226 complaint for failure to timely serve the summons and complaint. In connection with that motion, Dr. Donahue certified that certain x-rays taken at Elizabeth General Hospital in 1985 were destroyed before he was served with the summons and complaint and that this substantially and irreparably prejudiced his defense. He also certified that he was unable to obtain copies of certain testicular scans from Overlook Hospital which further substantially prejudiced his ability to defend the action.
Shortly after Dr. Donahue filed that motion, plaintiff's present counsel filed a substitution of attorney within the medical malpractice action and argued in opposition to Dr. Donahue's motion to dismiss. The trial court in that action determined that the two year delay in serving Dr. Donahue was prejudicial to the doctor because of the loss or destruction of medical records and granted the doctor's motion to dismiss that matter with prejudice.
Fourteen months later, in April 1992, plaintiff began this action alleging legal malpractice by defendant. Plaintiff alleged that defendant failed to effect proper and timely service of the complaint in the underlying medical malpractice action thus causing the suit to be dismissed with prejudice and depriving the plaintiff of the opportunity to seek compensation for his post-surgical injuries.
When defendant filed an answer to this complaint, he also filed a third-party complaint against plaintiff's present counsel; he alleged that plaintiff's present counsel negligently represented plaintiff in connection with the motion to dismiss and thereby caused the pro se complaint to be dismissed. That third-party complaint was eventually dismissed for failure to state a claim.
During trial of the matter, plaintiff presented expert medical testimony in support of his malpractice claim against Dr. Donahue and expert legal testimony in support of his malpractice claim against defendant. Defendant, similarly, presented expert testimony on both issues. Defendant made a motion to dismiss at the end of plaintiff's case under R. 4:37-2b, which the trial court denied. At the close of all of the evidence, defendant renewed his *227 motion. The trial court, in accordance with R. 4:40-2(a), reserved on the motion and submitted the case to the jury.
While the jury found in plaintiff's favor and, as noted, returned a verdict of $500,000, the trial court, four days later, granted defendant's motion to dismiss and entered judgment notwithstanding the verdict. The trial court did so on the grounds that there was nothing within the record to support a finding of legal malpractice which proximately caused the dismissal of the action against Dr. Donahue. We are satisfied that in doing so, the trial court failed to apply the correct standards to decide such a motion. We are thus constrained to reverse.
The standards the trial court must employ in deciding such motions are well-known:
A motion for a judgment notwithstanding the verdict .. . must be denied "if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor." In each case, "the court must accept as true all the evidence which supports the position of the party defending against the motion and must accord him the benefit of all legitimate inferences which can be deduced therefrom, and if reasonable minds could differ, the motion must be denied."
[Lanzet v. Greenberg, 126 N.J. 168, 174, 594 A.2d 1309 (1991).] (citations omitted)
The standard has been referred to as "rather mechanical." Dolson v. Anastasia, 55 N.J. 2, 5, 258 A.2d 706 (1969).
In order to understand our conclusion that the trial court erred in granting defendant's motion, it is necessary to set forth some portion of the evidence presented at trial.
The summary of the testimony we set forth is that presented on behalf of plaintiff. We recognize that defendant presented evidence of quite a contrary version of what occurred. A motion for judgment NOV, however, requires that we accept plaintiff's version. Lanzet v. Greenberg, supra at 174, 594 A.2d 1309.
Plaintiff testified that after he met with defendant initially, there was a brief exchange of correspondence back and forth for a week or two, and that he did not hear from defendant thereafter for "a good six months." Plaintiff said he then called defendant to inquire about the status of the case and defendant replied that "he *228 had to get it filed." Then defendant asked plaintiff to see a doctor in New York, Dr. Orkin. In 1986, defendant contacted plaintiff and told him he needed $500 to cover expenses and that he would not proceed without it. After plaintiff paid that sum, he got a letter from defendant asking him to set forth in writing his chronology of the case. Plaintiff said he did so. The plaintiff continued that the next time he heard from defendant was in June 1987 when he was asked to come in for an appointment. On June 25, 1987, he went to defendant's office where he learned defendant would no longer represent him.
Plaintiff's legal expert testified that in his opinion defendant did not send for plaintiff's medical records in a timely fashion. Plaintiff's legal expert testified:
You just can't hold onto a case for so long and then throw a client out, you know, when the statute is about to run. At least if he did it twelve months, eighteen months after the retainer, [plaintiff] would have had six months to get another lawyer, but instead it came right to the brink, ... You just can't turn a client out in the cold because he is not prejudiced because of this two-year delay and failure to serve the summons and complaint in a timely fashion. [Plaintiff's] case was prejudiced.
In addition, had he acted promptly ... he would have gotten a critical x-ray which was the testicular scan. That scan was no longer available for Dr. Donahue ... and that ... was an important consideration for his complaint having been dismissed.
Defendant's case file was entered into evidence. According to plaintiff, the only documents in defendant's file prior to June 1987 were the retainer agreement, a copy of the client's notes, prescriptions and medical bill, defendant's interview notes, a July 1985 letter requesting plaintiff to sign medical authorizations and a July 1986 letter from defendant requesting the results of certain testing and a written chronology.
The plaintiff's legal expert also testified that defendant deviated from acceptable standards of legal practice by terminating the lawyer-client relationship on June 25, 1987, two days before the statute of limitations was to expire. This, according to the expert, did not give plaintiff reasonable notice of termination nor did it give him enough time to retain the services of another attorney.
*229 The expert continued that defendant also deviated from acceptable standards of legal practice by failing to serve Dr. Donahue properly with the summons and complaint. According to the expert:
[H]e did not follow-up after [filing the complaint] to make sure it was properly served, and if he wasn't going to take on the responsibility of properly serving it, then he should never have drafted the summons.
The expert continued that defendant should, at the very least, have told plaintiff of the necessity of making certain he had a response from Dr. Donahue in sixty days and if he did not, to arrange for service through the Sheriff. The expert was further of the view that when defendant knew that Dr. Donahue was not served by mail with the initial attempt, he had an obligation to arrange for Sheriff's service.
The trial court, in granting defendant's motion for judgment notwithstanding the verdict, stated, with regard to the allegation of lack of diligence:
I find no evidence in the record which supports that claim. Indeed, the evidence is to the contrary. [Defendant] acted promptly and diligently in determining whether there was a valid cause of action that he felt could be pursued in respect to the allegations of [plaintiff] and there is nothing in the record to the contrary.
In reaching this conclusion, however, the trial court accepted the evidence presented on defendant's behalf and disregarded the evidence presented by plaintiff. In doing so, the trial court, in effect, stepped down from the bench and acted as a "thirteenth and decisive juror." Dolson v. Anastasia, supra, 55 N.J. at 6, 258 A.2d 706. That, however, was not the trial court's role in deciding this motion.
Further, we think that the jury could have inferred from the contents of defendant's file as presented to the jury a lack of diligence on defendant's part in pursuing plaintiff's claim against Dr. Donahue. We recognize that defendant testified to the extensive investigation he conducted and to the efforts he made to obtain an expert's report that would support plaintiff's claim of negligence on the part of Dr. Donahue. The jury clearly did not *230 accept that testimony and the trial court should not have done so in its stead.
The trial court improperly disregarded the testimony of plaintiff's expert that defendant should not have sought to terminate the lawyer-client relationship two days prior to the expiration of the statute of limitations. The trial court did so on the basis of its conclusion that the statute of limitations was not significant in this matter since the complaint was filed prior to the statutory deadline. This, however, overlooks the opinion of plaintiff's legal expert that defendant also deviated from accepted standards of legal practice by failing to serve Dr. Donahue properly. With regard to the service of the summons and complaint, the trial court concluded that plaintiff's medical malpractice complaint was dismissed due to his own inaction, rather than to defendant's. The trial court reached this conclusion by analyzing the opinion placed on the record at the time of the dismissal. We are satisfied, however, that on this issue as well, reasonable minds could differ and thus the trial court was obligated to defer to the jury's verdict.
The jury could have found that defendant was negligent in not properly serving the summons and complaint. Plaintiff testified that defendant told him he would serve the summons. The jury could reasonably determine that because defendant had issued the summons and because defendant was a lawyer and presumably knew the rules governing service and had said that he would serve the papers, that it was his responsibility to see to the proper service of the summons. Defendant began the process of service and the jury could have reasonably found that he had an obligation to either see to the completion of proper service or to spell out specifically to plaintiff his responsibility in this regard. Further, the jury could reasonably have determined that if Dr. Donahue had been properly served in July of 1987, the case against him would not have been dismissed two years later.
Following grant of defendant's motion for judgment NOV, plaintiff's counsel addressed the court and noted his concern that the *231 trial court had "usurped the function of the jury." In response, the trial court stated:
Court: I might add, only in light of your comments, sir, that based upon Dolson v. Anastasia, I think that the trial judge has a slightly, may be slightly, but also significantly different standard to apply rather than on the motion to dismiss at the end of the plaintiff's case. On a motion for a new trial, it must determine whether the verdict is against the weight of the evidence taking into consideration all of the evidence including that supplied by the defendant. This requires a scrutiny of the entire record and determination based upon the entire record as to what the facts are by the weight of the evidence, and by the weight of the evidence in this case, seems to me clear that Mr. Donnelly acted properly. I found nothing in the evidence, which I find to be credible, which would indicate any basis for a finding that Mr. Donnelly did not act conscientiously and diligently in pursuing this matter, nor that he did not take such action as would prevent any adverse prejudice to his client by his withdrawal. So, based upon that, I've come to the conclusion that, in view of that circumstance, that the jury's determinations to the contrary is improper, and I think it's important in the interests of justice that it be set aside.
We think it clear from this that the trial court did indeed use the inappropriate standard in considering defendant's motion for judgment notwithstanding the verdict. The trial court stated there was no credible evidence to support the jury's decision. But the trial court, in considering such a motion, is not to consider the credibility of the evidence but rather to accept "as true all the evidence which supports the position of the party defending against the motion." Dolson v. Anastasia, 55 N.J. 2, 5, 258 A.2d 706 (1969). Further, the trial court stated it was obligated to determine if the verdict was against the weight of the evidence. But the Supreme Court in Dolson noted that the trial court presented with such a motion "is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion." Id. at 5-6, 258 A.2d 706.
Because we have concluded that the trial court erred in granting judgment notwithstanding the verdict, we decline to treat the two additional issues plaintiff raises on appeal for they are now moot. Defendant has cross-appealed, however, and it is necessary to address the arguments he puts forth which challenge the verdict on other grounds.
*232 Defendant contended below, and repeats to us, that plaintiff's claim against him is barred under the entire controversy doctrine. His premise for this contention is that plaintiff should have joined this defendant as a party to the malpractice action against Dr. Donahue. Defendant asserts that such a result is compelled by Circle Chevrolet v. Giordano, Halleran & Ciesla, 142 N.J. 280, 662 A.2d 509 (1995).
We do not consider that anything within Circle Chevrolet, however, would require such a result. To the extent that plaintiff had a cause of action against this defendant for legal malpractice, it did not accrue until plaintiff's medical malpractice complaint was dismissed with prejudice. Since the cause of action for legal malpractice had not yet accrued, plaintiff is not barred from pursuing this defendant in this lawsuit on the grounds of the entire controversy doctrine. "The [entire controversy] doctrine does not apply to bar component claims that are unknown, unarisen or unaccrued at the time of the original action." Circle Chevrolet v. Giordano, Halleran & Ciesla, supra, 142 N.J. at 294, 662 A.2d 509.
Defendant also asserts that plaintiff's malpractice claim against him is barred by the doctrine of res judicata. Defendant asserts that the dismissal of plaintiff's malpractice claim against Dr. Donahue was based upon plaintiff's own failure to see to the prompt service of the summons and complaint. He asserts that this settled the issue as to the cause of the dismissal of plaintiff's medical malpractice action and that his legal malpractice action is thus barred by the doctrine of res judicata.
There are three elements to the doctrine of res judicata: the judgment relied upon must be valid, final and on the merits; the parties in the two actions must be either identical or in privity with one another; and the claims must grow out of the same transaction or occurrence. Watkins v. Resorts International Hotel & Casino, 124 N.J. 398, 412-13, 591 A.2d 592 (1991). Watkins itself, however, indicates that a dismissal for insufficient service of process does not constitute an adjudication on the merits. Further, *233 we do not agree that defendant and Dr. Donahue are in privity with one another even though their interests in defeating the medical malpractice action may be the same. This action is not barred by res judicata.
Defendant also challenges the sufficiency of the expert testimony proffered by plaintiff. Defendant complains first that testimony offered by Dr. Freed on the issue whether Dr. Donahue was negligent in the manner in which he performed this hernia repair constituted merely a net opinion. We agree with plaintiff, however, that the situation is analogous to that presented in Buckelew v. Grossbard, 87 N.J. 512, 435 A.2d 1150 (1981) and that sufficient testimony was presented to "permit[] an inference of defendant's (i.e., Dr. Donahue's) negligence." Id. at 525, 435 A.2d 1150.
Plaintiff sought compensation for his psychological damages, as well as for the physical pain and suffering he experienced. To substantiate his claim for psychological damages, he presented the testimony of Dr. Gregory Rasin, his treating psychiatrist. During the time that Dr. Rasin treated plaintiff, plaintiff suffered a slip and fall accident. Defendant argues here that plaintiff failed to establish which percentage of his injuries were attributable to the loss of his testicle and which were attributable to his slip and fall. Defendant, however, was the party seeking the apportionment of damages. As such, the burden rested upon him to establish that the damages were apportionable and further to present proof of apportionment. Dafler v. Raymark Industries, Inc., 259 N.J. Super. 17, 28-29, 33, 611 A.2d 136 (App.Div. 1992) aff'd o.b. 132 N.J. 96, 622 A.2d 1305 (1993).
Defendant's final point is that the trial court erred when it granted the pre-trial motion to dismiss defendant's third-party complaint against plaintiff's present trial counsel. We agree, however, with the conclusion of the trial court. Plaintiff's present trial counsel owed no duty to defendant, plaintiff's former attorney. Absent that duty, no cause of action could exist. Malewich v. Zacharias, 196 N.J. Super. 372, 482 A.2d 951 (App.Div. 1984).
*234 The order of January 4, 1995 entering judgment notwithstanding the verdict is reversed and the matter is remanded for entry of judgment in plaintiff's favor.