770 A.2d 1258 (2001)
339 N.J. Super. 97
Kathleen Q. KAPLAN, Plaintiff-Appellant,
v.
SKOLOFF & WOLFE, P.C., Cary B. Cheifetz, Esq., and Beatrice E. Kandell, Esq., Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued March 26, 2001.
Decided April 12, 2001.
*1259 Kenneth S. Thyne argued the cause for appellant (Stein, Thyne, Lagrottta, Roper & Twardowsky, attorneys; Hilton L. Stein, of counsel, Mr. Thyne, on the brief).
Meredith Kaplan Stoma, Livingston, argued the cause for respondents (Morgan, *1260 Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys; Ms. Stoma, of counsel and on the brief and Elise Dinolfo, on the brief).
Before Judges PETRELLA, NEWMAN and WELLS.
The opinion of the court was delivered by NEWMAN, J.A.D.
This is an appeal from an order granting summary judgment dismissing plaintiff Kathleen Q. Kaplan's legal malpractice action. We affirm.
Plaintiff initiated an action against defendants, her former attorneys in her matrimonial proceeding. The thrust of her complaint was that she was negligently represented by defendants in connection with the property settlement agreement that she entered into, which provided her less alimony, child support and equitable distribution than she should have received. This agreement had been memorialized in writing and placed on the record before the trial judge. When questioned in court, plaintiff indicated that she was satisfied with the services of her attorney and with the terms of the settlement agreement.
Defendants answered and counterclaimed for the outstanding legal fees in the amount of $45,176.39 plus interest, counsel fees and costs. Following several case management conferences, the trial judge entered an order requiring all expert reports by a certain date. Plaintiff ultimately submitted a report of a liability expert, Anthony P. Ambrosio, Esq., dated December 31, 1998.
The report asserted that plaintiff did not receive enough by way of settlement for child support, alimony, adequate contribution toward counsel fees and no share of her husband's law partnership. The expert also challenged the failure to account for unfavorable and unanticipated tax consequences to the wife and the failure to require the husband to repay the wife for expenses she incurred pendente lite and roof expenses. The expert further accused defendants of failing to represent the client in post-settlement proceedings where issues purportedly arose as to ambiguities in the settlement agreement, obliging plaintiff to retain other counsel to represent her.
The report continued:
An attorney owes to his or her client the duty of loyalty and zeal. The defendants' (sic) failed to take the steps to protect the interests of the plaintiff which any reasonably competent attorney possessing ordinary knowledge and skill practicing family law in the same community could have taken including insisting upon a trial in this matter where the husband and his attorney took a firm and aggressive stance during the last stages of the negotiations. Such failure was a deviation from the standard of care to which they were required to adhere. In the trial brief prepared by the defendant attorneys and submitted to the court the defendants set forth the position on behalf of the plaintiff which the defendants later abandoned. The support and alimony together is far below the total sum which the defendants originally advised the plaintiff would be fair and reasonable under all of the circumstances in the case and especially in light of her husband's income. In view of the husband's present earnings, the style and manner to which plaintiff and her children *1261 had become accustomed to during the marriage, the special needs of the child Michael, and the inability of the plaintiff to work, the provision for alimony are (sic) not adequate. After income taxes are paid on the alimony plaintiff will not have sufficient income to maintain the lifestyle established during the marriage and her husband will be in a substantially better financial position as a result of the settlement recommended by the defendant attorneys. Furthermore, no provision was made for increases in the alimony as the income of the defendant husband went up. Any client can make application for increases in support or alimony but the burden is an onerous one to show a change in circumstances which was not covered or anticipated when the initial settlement was executed. Often a non working spouse in a long term marriage is entitled to share in performance bonuses and substantial earnings increases of the divorced spouse.
Furthermore, the defendants representation that the plaintiff received a greater amount of alimony as consideration for not receiving any portion of her husband's interest in the law firm was clearly misleading and did not reflect the true circumstances of the settlement to which defendants recommended the plaintiff agree. In my experience of handling many divorce cases in over thirty years of practice, the wife left with the primary care and responsibility for three young children of the marriage should receive alimony and support equal to at least one half of the husband's gross income. In a recent case I handled, in a 18 year marriage where the husband's gross income was $250,000.00, the wife received $30,000 support for two children and $84,000 in alimony. Comparing that with the instant case, plaintiff herein clearly did not obtain the proper level of support and alimony to which she was entitled. The defendant attorneys did a more than adequate job of documenting the controlling facts. Their trial brief was very specific and carefully done. However, the final settlement negotiated on behalf of the plaintiff by the defendants was far from what plaintiff should have received. A variance of 10% or even 20% may be within the bounds of a reasonable settlement. Here, the variance in the settlement was closer to 35% of the amount demanded ($120,000.00 as compared to $190,000.00). The defendants improperly misrepresented to the plaintiff why she did not receive any portion of her husband's interest in his law firm partnership. All of this conduct deviated from the required standard of care, was negligent and constitutes legal malpractice.
Defendants moved for summary judgment. Plaintiff answered and filed a cross-motion for a forty-five day extension of time in which to serve defendant with an expert report on damages. In granting the summary judgment motion, Judge Wertheimer concluded that the liability expert's report was a net opinion "in the strictest sense of the word," as it contained "nothing more than bare conclusions, unsupported by facts." The court explained:
Here, the anecdotal experience of the expert is insufficient and not evidential. First of all, it's hearsay; and, second of all, it does not speak to the viable issues in this case, particularly the counterclaim. So there is no opinion in this case, there is no expert in this case; therefore, the counterclaim stands on its own two feet as unopposed, and I will *1262 enter judgment on the counterclaim in the amount of $45,000.
And for failure to comply with the second case management order, I'll forget about noncompliance with the first case management order; and, in light of the fact that we have a trial date in 17 days that has been assigned six months ago, I'm dismissing plaintiff's complaint because [plaintiff's counsel is] unable to go forward without an expert opinion at this time.
Judge Wertheimer also denied plaintiff's cross-motion for additional time to obtain an expert's report on damages, and entered a judgment on the counterclaim in the amount of $45,176.39 plus interest of $5929.40.
On appeal, plaintiff argues that the trial court erred in concluding that Ambrosio's opinion was a net opinion. Plaintiff contends that Ambrosio practiced law for over thirty years, reviewed and handled many divorce cases, and applied his knowledge of the standard of practice after reviewing the file in this matter. Relying on Ambrosio's personal experience, plaintiff asserts that Ambrosio had a sufficient basis to render an opinion that the alimony and support were inadequate and were a result of defendants' negligence. Plaintiff asserts that the settlement recommended by defendants was not reasonable and deviated from the required standard of care.
The net opinion rule provides that an expert's "bare conclusions, unsupported by factual evidence" are inadmissible. Buckelew v. Grossbard, 87 N.J. 512, 524, 435 A.2d 1150 (1981). The rule often focuses upon "the failure of the expert to explain a causal connection between the act or incident complained of and the injury or damage allegedly resulting therefrom." Ibid. In this regard, the net opinion rule requires the expert witness "to give the why and wherefore of his expert opinion, not just a mere conclusion." Jimenez v. GNOC, Corp., 286 N.J.Super. 533, 540, 670 A.2d 24 (App.Div.), certif. denied, 145 N.J. 374, 678 A.2d 714 (1996).
In Taylor v. DeLosso, 319 N.J.Super. 174, 725 A.2d 51 (App.Div. 1999), this court instructed that in a professional negligence case
plaintiff must produce expert testimony upon which the jury could find that the consensus of the particular profession involved recognized the existence of the standard defined by the expert. It is insufficient for plaintiff's expert simply to follow slavishly an "accepted practice" formula; there must be some evidential support offered by the expert establishing the existence of the standard. A standard which is personal to the expert is equivalent to a net opinion.
[Id. at 180, 725 A.2d 51 (citations omitted).]
In Taylor, plaintiff's expert witness testified that the defendant architect deviated from accepted standards of architectural practice by failing to make a site inspection of plaintiff's property to verify the location of a maple tree before preparing the site plan. Ibid. Plaintiff's expert testified that when a plan involves a small site, a "prudent architect would go to the site and make sure that he knows where that tree is, because all his work is going to revolve around that tree." Ibid.
We explained that the problem with this testimony was that plaintiff's expert "presented no authority supporting his opinion. No reference was made to any written document, or even unwritten custom or practice indicating that the consensus of *1263 the architectural community recognizes a duty to make a site inspection for `small sites.'" Ibid. In this regard, we were concerned by the "the total absence in [plaintiff's expert's] testimony of reference to any text book, treatise, standard, custom or recognized practice, other than his personal view." Id. at 182, 725 A.2d 51; see Baxt v. Liloia, 281 N.J.Super. 50, 57, 656 A.2d 835 (App.Div.1995) (stating that it is well established in New Jersey that "the Rules of Professional Conduct set forth an appropriate standard of care by which to measure an attorney's conduct"). We therefore concluded that this testimony constituted a net opinion, and defendants were thus entitled to a judgment of dismissal as a matter of law. Id. at 184, 656 A.2d 835.
So too here. Plaintiff's expert offered no evidential support establishing the existence of a standard of care, other than standards that were apparently personal to himself. In this regard, Ambrosio failed to reference any written document or unwritten custom accepted by the legal community recognizing what would constitute a reasonable settlement under the facts presented in this case. In this stark absence of supporting authority, Ambrosio provided only his personal view, which, as we have explained, "is equivalent to a net opinion." Id. at 180, 656 A.2d 835.
This court has previously required expert testimony to determine the fair settlement value of a plaintiff's motor vehicle accident claim. Kelly v. Berlin, 300 N.J.Super. 256, 269, 692 A.2d 552 (App. Div.1997). In Kelly, we explained that "[w]ithout expert testimony, a jury simply does not have the knowledge, training, or experience to decide the settlement value of plaintiff's claim." We instructed:
The many factors that go into a settlement are not within the knowledge of the average juror. An expert in the settlement of claims, such as an experienced torts attorney or an experienced claims adjuster, is necessary to explain the various factors which are taken into consideration in the settlement of a case of this kind. Such an expert could explain which factors are relevant and how they affected this matter to enable the jury to determine whether the defendant doctors' negligence caused plaintiff to settle for a lower amount than he otherwise would have, and, if so, the amount of damages plaintiff sustained as a result. For example, such expert testimony could render a comparison of similar claims in the area, an analysis of how plaintiff's other injuries would have affected the settlement of his lower back injury, an opinion as to the value of plaintiff's lower back injury in light of its projected severity when the case settled, and an analysis of how legal issues would have affected the settlement amount.

[Ibid.]
Here, Ambrosio failed to render a comparison of similar property settlement agreements, other than one ancedotal reference to a case he had recently handled. Moreover, he failed to provide an analysis of how legal issues would have affected the settlement amount.
In the final analysis, Ambrosio's opinion can be reduced to the bald assertion that if he had represented plaintiff, he could and would have effectuated a more favorable settlement on her behalf. Even if that were so, that does not establish a standard by which to judge defendants' conduct.
Because we have determined that plaintiff lacked an expert on liability, there is no need to address whether plaintiff *1264 should have been afforded additional time to secure a damage expert. Without a liability expert, plaintiff could not proceed on her complaint. We only note that the trial judge's determination would not constitute an abuse of discretion by denying the cross-motion, given plaintiff's repeated disregard of court deadlines for production of expert reports.
There has been no challenge on this appeal to the entry of the summary judgment on the counterclaim. We therefore affirm the order dismissing plaintiff's complaint and entering judgment on the counterclaim.