690 A.2d 637

DOROTHY MATARAS, INDIVIDUALLY, PLAINTIFF–APPELLANT/CROSS–RESPONDENT, AND DOROTHY MATARAS, NATURAL MOTHER AND FORMER GUARDIAN AD LITEM OF THE FORMER MINOR, ERIC MATARAS, PLAINTIFF, v. JAMES MATARAS, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF ANTHONY MATARAS; LOUIS MATARAS; DEAN MATARAS, DEFENDANTS–RESPONDENTS/CROSS–APPELLANTS, AND S. GEORGE GREENSPAN; STEPHEN F. PELLINO AND THE LAW FIRM BASILE, BIRCHWALE & PELLINO, INDIVIDUALLY AND AS ATTORNEYS FOR THE ESTATE OF ANTHONY MATARAS, AND FOR JAMES MATARAS INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF ANTHONY MATARAS; JOHN J. FANNAN, JOHN J. RYAN, JR., JUDITH A. HEIM, JOHN M. AGNELLO, AND THE LAW FIRM CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN, A PROFESSIONAL CORPORATION OF NEW JER

SEY, INDIVIDUALLY AND AS ATTORNEYS FOR THE ESTATE OF ANTHONY MATARAS, FOR JAMES MATARAS INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF ANTHONY MATARAS, FOR DOROTHY MATARAS, AND FOR ERIC MATARAS BY HIS MOTHER AND GUARDIAN AD LITEM DOROTHY MATARAS, DEFENDANTS–RESPONDENTS, AND SAM ATHANASENAS; MARK MATTIA AND THE LAW FIRM OF NOWELL, AMOROSO & MATTIA, A PROFESSIONAL CORPORATION OF NEW JERSEY, INDIVIDUALLY AND AS GUARDIAN AD·LITEM OF THE INFANT ERIC MATARAS, DEFENDANTS.

---

JOHN J. FANNON, JOHN J. RYAN, JR., JUDITH A. HEIM, JOHN AGNELLO, AND THE LAW FIRM CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN, A PROFESSIONAL CORPORATION OF NEW JERSEY, THIRD–PARTY PLAINTIFFS, v. ROBERT B. GREEN, THIRD–PARTY DEFENDANT.

---

DOROTHY MATARAS, INDIVIDUALLY AND AS FORMER GUARDIAN AD LITEM OF THE FORMER MINOR, ERIC MATARAS, FOURTH–PARTY PLAINTIFF–APPELLANT, v. MARIANNE ESPINOSA MURPHY, FOURTH–PARTY DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted February 4, 1997—Decided March 21, 1997.

Before Judges NEWMAN and VILLANUEVA.

Appellant/cross-respondent, Dorothy Mataras, filed *pro se* briefs.

*Lum, Danzis, Drasco, Positan & Kleinberg*, attorneys for respondents/cross-appellants James Mataras, individually and as Executor of the Estate of Anthony Mataras, Louis Mataras, and Dean Mataras (*Dennis J. Drasco*, of counsel and on the brief; *Kevin J. O'Connor*, also on the brief).

*Voorhees & Acciavatti*, attorneys for respondent S. George Greenspan (*Peter A. Ouda*, of counsel and on the brief; *Steven W. Greigel*, also on the brief).

*Basile, Birchwale & Pellino*, attorneys for respondent Stephen F. Pellino and Basile, Birchwale and Pellino (*Anthony P. Cialone*, on the brief).

*Tompkins, McGuire & Wachenfeld*, attorneys for respondents John J. Fannan, John J. Ryan, Jr., Judith A. Heim, John M. Agnello, Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein (*Marianne Espinosa Murphy* of counsel and on the brief; *Whitney Woods Bemer*, also on the brief).

The opinion of the court was delivered by

VILLANUEVA, J.A.D. (retired and temporarily assigned on recall).

This appeal involves claims contained in plaintiff's Third Amended Complaint in which she, as widow of Anthony Mataras, asserts claims against the Mataras defendants (Anthony's sons by his first marriage) and their attorneys arising from two prior actions. The first action involved the probate of the Will of Anthony Mataras, the father of the Mataras defendants, entitled *In the Matter of Probate of the Alleged Will of Anthony Mataras*. The second action involved the wrongful death action arising from the death of Anthony Mataras in an automobile accident.

In her Third Amended Complaint, plaintiff, through her attorney, alleged that Anthony Mataras' Will was improperly probated and that the subsequent wrongful death action instituted by James Mataras as executor was improperly settled and the proceeds improperly allocated. Plaintiff alleged that: (i) James, Louis, and Dean Mataras were negligent, breached their fiduciary duties, committed theft, and intentionally inflicted emotional distress on plaintiff; (ii) S. George Greenspan ("Greenspan") breached his fiduciary duty, was negligent, and intentionally inflicted emotional distress on plaintiff because he, among other things, failed to investigate the scene of the accident and misinformed her as to her share of property she could take; (iii) Stephen Pellino and Basile, Birchwale & Pellino ("Pellino") breached their fiduciary duty, were negligent, committed theft and caused plaintiff emo-

tional distress in its representation regarding "the probate of James Mataras' estate (sic)"; and (iv) the attorneys from Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein ("Carella Byrne") breached their fiduciary duty, were negligent, committed theft and caused plaintiff emotional distress in their representation in the wrongful death action.

On May 17, 1994, defendant Carella Byrne filed an Answer, Crossclaim for Contribution, and a Third–Party Complaint for contribution and indemnification against plaintiff's then counsel, Robert B. Green ("Green"). Carella Byrne's theory was that Green had been retained by plaintiff as "independent counsel" and thus shared in the fiduciary relationship between plaintiff and Carella Byrne.

Plaintiff filed a Fourth–Party Complaint against Marianne Espinosa Murphy, counsel for Carella Byrne, and counterclaims against the Carella Byrne defendants for their filing the Third–Party Complaint for contribution and indemnification against Green.[1]

On June 11, 1994, defendant Greenspan filed a cross-motion for summary judgment to dismiss the claims filed against him by plaintiff. Greenspan contended that: (i) he owed no duty to plaintiff because he was never retained to represent plaintiff with respect to either the wrongful death action or plaintiff's potential entitlements under Anthony Mataras' will; (ii) plaintiff's claims pertaining to her entitlement under her husband's will must fail as a matter of law; and (iii) plaintiff's complaints of theft and intentional infliction of emotional distress were without legal and factual basis.

---

[1] Although Eric Mataras, the son of plaintiff and Anthony Mataras, is listed in the caption by Order of June 10, 1996, we remanded this case to determine the status of Eric Mataras in this case in order to clarify his interest in this appeal. The trial court by letter of July 15, 1996, advised us that Eric Mataras became an adult in or before 1995, he did not wish to participate in this lawsuit, and he would not proceed with this suit on his own behalf.

On June 16, 1994, defendants Pellino filed an answer to the Third Amended Complaint and asserted affirmative defenses, cross-claims and a jury demand.

On June 24, 1994, the Mataras defendants filed a motion for summary judgment to dismiss the claims made by plaintiff against them. The Mataras defendants contended that: (i) James Mataras properly administered the estate of the decedent; (ii) plaintiff received the full amount of all probate and estate monies properly due and owing to her; (iii) plaintiff knowingly and with representation of counsel accepted the settlement in the wrongful death action; and (iv) the court properly allocated said settlement proceeds in that wrongful death action.

Also on June 24, 1994, defendant Carella Byrne filed a motion seeking, among other relief: (i) to disqualify plaintiff's counsel (Green); (ii) to dismiss the Fourth–Party Complaint against Marianne Espinosa Murphy; (iii) to dismiss Counts II and IV of plaintiff's Amended Complaint for failure to state a claim; and (iv) to enter summary judgment dismissing plaintiff's Third Amended Complaint. On July 29, 1994, the trial court heard oral argument on the motion, and on August 5, 1994, the trial court entered an order disqualifying Green as attorney for plaintiff. We denied plaintiff's motion for leave to appeal that Order. Leave to appeal to the Supreme Court was denied by Order of October 19, 1994, as was plaintiff's application for reconsideration of that Order. Since that time, plaintiff has proceeded *pro se.*

On March 30, 1995, the first trial court judge declined to recuse himself, as plaintiff had requested, and entered his opinion on the record granting the Mataras defendants' motion for summary judgment finding that plaintiff's claims were without merit and legally deficient. The trial court also granted the summary judgment motions filed by Carella Byrne and George Greenspan. The judge did not dismiss plaintiff's complaint as to defendant Pellino because discovery was incomplete.

Further, although no formal application had been made, the trial court granted Carella Byrne's oral application for attorney's

fees as a sanction against plaintiff for filing frivolous pleadings. The trial court found that "[t]he Complaint filed against all parties was groundless, frivolous and intended to harass." Additionally, the trial court stated that:

[i]n over eight years on the bench, this court has never seen greater abuse of the litigation process; greater misunderstanding of the nature of the process; and a poorer grounded case than that which has been dismissed today.

By order dated March 31, 1995, the trial court memorialized the rulings made on March 30, 1995. Paragraph five of the order stated: "counsel for all prevailing defendants shall be permitted to submit application for fees and costs incurred in moving to dismiss the instant complaint, pursuant to *N.J.S.A.* 2A:15–59.1." After entry of the March 31, 1995 order, the judge who had heard all the previous matters resigned from the bench.

A second judge handled the remaining claims against defendants Pellino. Plaintiff subsequently filed letters expressing her desire to dismiss all claims as to Pellino. On November 13, 1995, the second judge issued a letter stating that she was satisfied that plaintiff did not want to proceed against Pellino. Accordingly, by order dated December 7, 1995, the court dismissed the plaintiff's remaining claims with prejudice. In the order, the court also stated that "all other claims of plaintiffs against all other defendants have been previously dismissed, this order shall be, and is, a final judgment of the Superior Court, Trial Division, as per *R.* 2:2–3."

On November 22, 1995, the Mataras defendants filed a motion for attorney fees and expenses of $31,496.79, pursuant to *N.J.S.A.* 2A:15–59.1. By order entered December 19, 1995, the judge without oral argument or stating the court's reasoning, on the record, denied the Mataras defendants' motion. The Mataras defendants have cross-appealed.

*The Accident*

On June 7, 1988, two wheels from James Marshall's tractor-trailer came loose on the New Jersey Turnpike. A driver travelling southbound crashed into the wheel lifting the wheel high in

the air into the northbound lanes where it came down directly on top of Anthony Mataras' car. On this same day, plaintiff consulted S. George Greenspan and he recommended to her an attorney, John Agnello at Carella Byrne, to handle her wrongful death claim.[2] Greenspan later met with plaintiff and Agnello at Carella Byrne, and Agnello agreed to take the case.

On or about June 19, 1988, James Mataras retained Pellino to represent and advise him individually and as executor of the estate and to be attorneys for the estate.

*The Administration of the Estate*

Earlier, in February 1984, Anthony Mataras had executed a will which provided for his three sons from his first marriage, James, Louis, and Dean Mataras, and named James as Executor. Anthony Mataras had a fourth son, Eric Mataras, with plaintiff in or about 1977 while still married to his first wife. Anthony Mataras' will, however did not mention his son, Eric Mataras, nor plaintiff, whom he married on June 30, 1984, after his first wife's death. Anthony Mataras did not change his will to include plaintiff. The only asset specifically mentioned in the will was decedent's one-half interest in the J.T.S. Restaurant Company which he bequeathed to James Mataras. As to Anthony Mataras' other assets, paragraph five of the will provided specifically: "It is my intention that all other property that I may own and possess at the time of my death shall pass according to the New Jersey Laws of Intestacy." Additionally, on or about June 29, 1984, Anthony Mataras had executed a Stockholder's Agreement with Sam Athanasenas, his business partner, providing that his interest in J.T.S. would pass to his son, James Mataras.

After the accident, letters testamentary were issued to James as Executor of the Estate of Anthony Mataras on or about July 19, 1988. James Mataras then proceeded to administer the estate of

---

[2] Plaintiff claims that she retained Greenspan to handle all matters arising from Anthony Mataras' death but provides no evidence supporting this proposition.

the decedent consistent with the will; he distributed decedent's fifty shares in J.T.S. to the specified beneficiary, himself, and was prepared to distribute the remainder of the decedent's estate pursuant to the terms of the will, which stated that the remainder of the decedent's estate was to be distributed in accordance with the New Jersey Laws of Intestacy. Thus, plaintiff would receive 50% of the remainder of James Mataras' assets, and each of the sons of the decedent, James, Louis, Dean and Eric, would receive an equal one-fourth share of the remaining 50% of the assets owned by the decedent (other than the stock in J.T.S.).[3]

The funeral expenses and various debts of Anthony Mataras, however, consumed the assets that would have passed to James, Louis, Dean and Eric Mataras, as well as to plaintiff. Thus, plaintiff did not receive any of the assets from decedent's estate. Outside the will, however, plaintiff was the beneficiary of life insurance benefits in excess of $60,000. She also received the marital home because it was owned as tenants by the entirety. Eric Mataras was the beneficiary of life insurance benefits in the amount of approximately $46,000.

Throughout the administration of the estate, plaintiff took no steps to challenge the will or to take her elective share pursuant to *N.J.S.A.* 3B:8–1. In a letter dated May 3, 1993, plaintiff confirmed decedent's testamentary intent:

> My husband [decedent, Anthony Mataras] made it clear to all of us, that *Jimmy [ (James Mataras) ] was to get my husband's share of the diner/restaurant since it was Jimmy, in effect, who gave up his career to help his father out at the time of great financial and business hardship.... Eric and I were to have the house we lived in at the time.... The life insurance my husband purchased for his entire family was fairly well-split between the five of us....* My husband [decedent, Anthony Mataras] had told me that Jimmy understood that the burial arrange-ments were his responsibility and are presumed that he was carrying out specific

---

[3] *See N.J.S.A.* 3B:5–3d (stating that intestate share of surviving spouse is one-half of the intestate estate "[i]f there are surviving issue one or more of whom are not issue of the surviving spouse ..."); *see also N.J.S.A.* 3B:5–4a ("The part of the intestate estate not passing to the surviving spouse under *N.J.S.A.* 3B:5–3 ... passes as follows: a. To the issue of the decedent; if they are all of the same degree of kinship to the decedent they take equally ...").

instructions for my husband. At no time was I consulted. Nevertheless, I did agree to split funeral costs with my stepsons.

[Emphasis added.]

### *The Wrongful Death Action*

The law firm of Cecchi, Brody and Agnello (now defendant Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein) represented the Estate of Anthony Mataras in a wrongful death action arising from Anthony's death. Suit was filed on December 12, 1988. While the suit was pending, plaintiff retained Robert Green in 1991 to act as her independent counsel in the underlying action. Mr. Green is the attorney who filed the instant complaint on plaintiff's behalf.

After negotiations, on or about September 15, 1992, the case was settled for $200,000. The net proceeds of $130,000 were distributed pursuant to court order as follows: $75,000 to plaintiff Dorothy Mataras, $25,000 to Eric Mataras, and $10,000 each to Louis, Dean, and James Mataras. Plaintiff agreed to all terms of the settlement and, when the matter was settled, she shook Ms. Heim's (attorney for Carella Byrne) hand.

On appeal, plaintiff Dorothy Mataras alleges, *inter alia:* (i) tortious interference with a civil action; (ii) violation of the separation of powers doctrine, and the judiciary has no right to decline to exercise jurisdiction; (iii) she has been oppressively harmed by abuses of judicial discretion denying her procedural rights; (iv) coerced or fraudulent settlements cannot defeat statutory rights; (v) there was a wanton and willful disregard with reckless indifference in an oppressive breach of fiduciary duties; and (vi) Green's third party status and his disqualification based upon falsified certification was in the nature of malicious prosecution denying plaintiff free access to the courts.

Except for her response to the Mataras defendants' cross-appeal for frivolous litigation fees which was denied, plaintiff's claims are clearly without merit. *R.* 2:11–3(e)(1)(E). Notwithstanding plaintiff's latest letter dated March 4, 1997, citing *Olds v.*

*Donnelly,* 291 *N.J.Super.* 222, 677 *A.*2d 238 (App.Div.), *certif. granted,* 146 *N.J.* 565, 683 *A.*2d 1161 (1996), the trial court properly granted summary judgment dismissing plaintiff's third amended complaint because plaintiff's competent evidence submitted did not raise a genuine issue as to a material fact.

Plaintiff took no steps to challenge her late husband's will or to take her elective share and she received more than she was entitled to as a matter of law. She also agreed to all the terms of the settlement of the wrongful death action. The court properly disqualified Robert Green for a patent conflict of interest. The fourth-party complaint against Marianne Espinosa Murphy was properly dismissed based upon absolute privilege.

The only real issue in this appeal is the Mataras defendants' cross-appeal of the order denying attorney's fees under *N.J.S.A.* 2A:15–59.1. Because there is no record to show why the judge denied the attorney's fees, it is necessary for us to remand the case to obtain the judge's reasons for denying fees. However, since the Mataras defendants have asserted certain arguments which they say mandate an award of fees, we will briefly address them.

The Mataras defendants contend that the first judge's finding that plaintiff conducted frivolous litigation is the law of the case by which the second judge is bound. This is simply not so because the first judge had no right to make that determination until the proceeding, or at least that part against the Mataras defendants, was completed. In addition, pursuant to *N.J.S.A.* 2A:15–59.1(c), a formal application had to be made, after which plaintiff would be entitled to a hearing. *See McKeown–Brand v. Trump Castle Hotel & Casino,* 132 *N.J.* 546, 559, 626 *A.*2d 425 (1993) (citing *Fagas v. Scott,* 251 *N.J.Super.* 169, 221, 597 *A.*2d 571 (Law Div.1991)).

Second, and most significant, is the fact that plaintiff's Third Amended Complaint, upon which her causes of action were based, was prepared by her attorney, who was later disqualified

upon defendants' motion. Therefore, plaintiff could not be assessed fees if she acted in good faith on advice of counsel. *McKeown–Brand*, 132 *N.J.* at 558, 626 *A.*2d 425. This factor is particularly appropriate herein where plaintiff's attorney was disqualified. This issue could only be determined after a plenary hearing. If the trial court should find that after plaintiff began appearing *pro se*, she maintained the action in bad faith despite her former attorney's advice, or fabricated facts, the court might be able to find that plaintiff continued her case against the Mataras defendants "in bad faith, solely for the purpose of harassment, delay or malicious injury."

 Lastly, in any event, it would not be proper to assess any fees against Eric Mataras, who is now of age, because there is no evidence in the record that he in any way wanted this litigation instituted or continued it. In fact he informed us that he does not want to participate in this appeal.

On the direct appeal, we affirm the judgment dismissing the complaint and third-party complaint. On the cross-appeal, we reverse and remand to the trial court for it to set forth the reasons why frivolous litigation fees were denied. We do not retain jurisdiction.