**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1581-16T1

KELVIN SMITH,

  Plaintiff-Appellant/
  Cross-Respondent,

v.

JOHN F. JOHNSON,
RALPH ALLOCCA, ESQ.,
BRIAN FRUEHLING, ESQ.,
and TICOR TITLE INSURANCE
COMPANY OF FLORIDA,

  Defendants,

and

PAUL J. BURR, ESQ.,

  Defendant-Respondent/
  Cross-Appellant.

_____

   Argued December 4, 2018 – Decided January 17, 2019

   Before Judges Yannotti and Rothstadt.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1599-15.

Jessica A. Tracy argued the cause for appellant/cross-respondent (Curcio Mirzaian Sirot, LLC, attorneys; Paul F. Campano, of counsel; Jessica A. Tracy, on the briefs).

Raphael M. Rosenblatt argued the cause for respondent/cross-appellant (Rosenblatt Law PC, attorneys; Raphael M. Rosenblatt, of counsel and on the briefs).

PER CURIAM

In this case, plaintiff Kelvin Smith asserted claims against defendant Paul J. Burr for legal malpractice and conversion. The matter was tried before a jury, which returned a verdict for defendant on both causes of action. Plaintiff then filed a motion for judgment notwithstanding the verdict (JNOV). Defendant demanded that plaintiff withdraw the motion, claiming it was frivolous. Plaintiff refused to withdraw the motion, and defendant filed a cross-motion pursuant to Rule 1:4-8 for sanctions.

The trial judge entered orders dated November 4, 2016, denying the motions. Plaintiff's appeal and defendant's cross-appeal followed. On plaintiff's appeal, we affirm the trial court's order denying the motion for a JNOV. On defendant's cross-appeal, we affirm the order denying defendant's motion for sanctions, and dismiss the other issues raised as moot.

2

I.

We briefly summarize the relevant facts and procedural history. John Johnson agreed to sell plaintiff certain real property on Rose Avenue in Jersey City. Attorney Ralph P. Allocca acted as the settlement agent for plaintiff and Johnson. Before the closing, plaintiff obtained a $300,000 loan to purchase the property, and some of these funds were to be applied to pay off Johnson's outstanding mortgage loan. America's Servicing Company (ASC), the mortgage-servicing company, agreed to accept $230,126.26 to pay off Johnson's loan and discharge the mortgage on the property.

The closing took place on January 26, 2009, and title to the property was transferred to plaintiff, and thereafter Allocca sent ASC a check drawn on his attorney trust account to pay off Johnson's loan. On January 28, 2009, ASC returned the check to Allocca, and told him payment had to be made by cashier's check or with certified-bank funds.

On March 26, 2009, US Bank, N.A., filed a foreclosure action against Johnson, plaintiff, and others claiming that Johnson's mortgage loan remained due and owing. On April 13, 2009, Allocca obtained a cashier's check, payable to ASC, in the amount of $230,728.42 to pay off Johnson's loan. It appears that the check was given to Anthony Garvin, the broker who introduced plaintiff to

3

the property and negotiated the terms of the sale. On April 17, 2009, Garvin endorsed the check and deposited the funds into an account at Bank of America, in the name of "Laura Mae LLC d/b/a/ Master Builders," an entity that Garvin owned.

At his deposition, plaintiff testified that he never saw the check; however, at trial, plaintiff admitted he endorsed the check over to Garvin expecting that Garvin would use the funds to pay off Johnson's loan. Plaintiff believed this would remove ASC's lien on the Rose Avenue property and resolve the pending foreclosure action.

In July 2010, Johnson retained defendant to recover the monies from the sale of the property that should have been used to pay off his loan. Johnson and defendant entered into a "Legal Services Agreement" (LSA), which provided, among other things, that defendant's engagement was limited to: (1) actions or claims by Johnson arising from the sale of the Rose Avenue property; (2) disputes with any creditor or lender claiming monies that Johnson owed for services provided; and (3) "action[s] or dispute[s] arising after the collection of the unpaid proceeds" from the sale of the property.

The LSA further provided that Johnson would "be solely responsible for the payment of any and all loan proceeds, including but not limited to, any

4

deductions of legal fees and costs paid to attorney, due on the" property. In addition, the LSA stated that defendant would not be responsible for paying any of Johnson's debts, loans, or other obligations.

On July 1, 2010, defendant wrote to Allocca and stated that Johnson had retained him to investigate and collect monies from the January 26, 2009 closing, which were supposed to be applied to pay off Johnson's loan. Defendant demanded a copy of Allocca's closing file.

Allocca responded in a letter dated July 12, 2010. He stated that ASC had returned the check to pay off Johnson's loan because the check was drawn on an attorney-trust account. Allocca said he thereafter obtained a cashier's check, and apparently the check was given to Garvin. According to Allocca, Garvin deposited the funds into a bank account, without his knowledge or approval. Allocca provided defendant with a copy of the check, which plaintiff and Garvin had endorsed.

Defendant did not hear anything further from Allocca for several months, and on November 9, 2010, he wrote to Allocca and demanded additional information. Allocca replied in a letter dated November 10, 2010, and enclosed a copy of his closing file. In the letter, Allocca stated that he had done "nothing improper, illegal or unethical." He added that if anyone had converted the funds

5

that were supposed to be used to pay off Johnson's loan, plaintiff and Garvin were the persons responsible.

On November 30, 2010, defendant wrote to plaintiff and informed him that Johnson had retained him to investigate the apparent misapplication of the proceeds from the sale of the Rose Avenue property, make formal criminal and civil complaints, retrieve the funds, and collect damages and legal fees. Defendant told plaintiff he should retain an attorney and contact his office. A tenant at the Rose Avenue property provided plaintiff with the letter. Plaintiff then called defendant. He said he did not want defendant to represent him or take any legal action on his behalf.

On March 17, 2011, Allocca wrote to defendant and advised him he had $233,000 in his trust account, which Garvin had given to him to pay off Johnson's loan. In the letter, Allocca stated that if defendant wanted him to, he would transfer the monies to defendant to be "h[eld] in escrow pending a resolution of this matter." Allocca also proposed to resolve Johnson's claim against Garvin for damages. Allocca did not, however, provide defendant with a proposed escrow agreement, and defendant never agreed in writing to hold any funds in escrow. Defendant testified that he understood Allocca's letter to mean

that he should hold the monies pending resolution of Johnson's claim against Garvin for damages.

Allocca died on April 15, 2011. Thereafter, a Chancery Division judge in Morris County appointed Brian J. Fruehling to act as trustee for Allocca's law practice. On May 10, 2011, Fruehling sent defendant a check in the amount of $233,000, drawn upon Allocca's trust account. Fruehling also provided defendant with a copy of a letter that Allocca had written to defendant. In the letter, Allocca stated he was enclosing the $233,000 check, and he asked defendant to "[p]lease hold these funds in your trust account pending the resolution of all claims regarding the property."

On June 1, 2011, defendant wrote to plaintiff and Garvin and stated that unless he heard from them within five business days, he would release the funds to Johnson. On June 7, 2011, defendant wrote to Johnson and reminded him of his obligation to pay the outstanding loan. In the letter, defendant stated that the letter served as confirmation "that [y]ou have directed me to release said funds to you; and that you are fully aware that [y]ou remain responsible to pay the mortgage loan on [the subject property]; and that [y]ou have stated that you will attempt to resolve and pay said mortgage loan on your own." Because plaintiff and Garvin had not contacted defendant, he deducted his legal fee from

the funds, and distributed the balance to Johnson. Plaintiff testified that as of the date of the trial, the mortgage was still on the property.

On August 3, 2011, plaintiff's attorney wrote to defendant and claimed that while title to the Rose Avenue property may have been transferred, "a closing has not occurred." Plaintiff's attorney stated that unless Johnson's mortgage loan was paid off within five days, "and a proper closing of title held," plaintiff would file "suit to undo the entire transaction and receive a refund of the monies being held in [defendant]'s trust account." Plaintiff's attorney did not, however, file an action to undo the transaction.

In September 2014, plaintiff filed an answer to the pending foreclosure complaint, a cross-claim, and a third-party complaint, asserting claims against Johnson, Allocca, Fruehling, Ticor Title Insurance of Florida, and defendant. In December 2014, the Chancery Division severed plaintiff's claims from the foreclosure action and transferred them to the Law Division for disposition.

Defendant filed an answer to plaintiff's complaint. He later filed an amended answer, counterclaim, cross-claim, and fourth-party complaint against Garvin. The trial court subsequently dismissed the claims against Ticor, Fruehling, Allocca, and Johnson.

A-1581-16T1

In July 2016, defendant filed a motion for summary judgment, which the court denied as untimely under Rule 4:46-1. Thereafter, plaintiff's claims against defendant were tried before a jury. At the trial, plaintiff testified and called defendant as a witness. Plaintiff also presented expert testimony from Anthony Ambrosio.

At the conclusion of plaintiff's case, defendant moved for involuntary dismissal or entry of a judgment on plaintiff's claims, pursuant to Rule 4:37-2(b) and Rule 4:40-1. Defendant argued that plaintiff's legal malpractice claim failed because plaintiff had not established that he owed plaintiff a duty. Defendant further argued that plaintiff failed to prove he converted the monies. He also contended that both claims should be dismissed because plaintiff failed to establish he was damaged by defendant's alleged wrongful acts.

While the motions were pending, defendant presented expert testimony by Bennett J. Wasserman. At the conclusion of Wasserman's testimony, the trial judge denied defendant's motions to dismiss plaintiff's legal malpractice and conversion claims, but reserved decision on the motion to dismiss both claims for lack of proof of damages. The attorneys for the parties then provided closing arguments, and the judge charged the jury. After deliberations, the jury returned a verdict for defendant on both causes of action.

A-1581-16T1

Thereafter, the judge denied as moot defendant's motion to dismiss based on plaintiff's alleged failure to prove damages. Plaintiff filed a motion for a JNOV, which the judge denied. The judge also denied defendant's motion for sanctions under Rule 1:4-8 with regard to the JNOV motion. This appeal and cross-appeal followed.

## II.

On appeal, plaintiff argues the trial judge erred by denying his motion for a JNOV. When reviewing a trial court's order denying a motion for a JNOV, we apply the standard that governs the trial court. Riley v. Keenan, 406 N.J. Super. 281, 298 (App. Div. 2009) (citing Frugis v. Bracigliano, 177 N.J. 250, 269 (2003)).

The standard for a motion for a JNOV is the same that applies to a motion for involuntary dismissal under Rule 4:37-2(b) and a motion for judgment under Rule 4:40-1. Filgueiras v. Newark Pub. Sch., 426 N.J. Super. 449, 455 (App. Div. 2012). Therefore, we "must accept as true all the evidence which supports the position of the party defending against the motion and according [that party] the benefit of all inferences which can reasonably and legitimately be deduced therefrom, and if reasonable minds could differ, the motion must be denied." Riley, 406 N.J. at 298 (citing Dolson v. Anastasia, 55 N.J. 2, 5 (1969)).

10

A.  Wasserman's Testimony

On appeal, plaintiff argues that Wasserman's testimony constituted a net opinion, which the jury improperly relied upon in rendering its verdict.  Plaintiff asserts Wasserman "fail[ed] to impart special knowledge or expertise," provided "bare opinions based on speculation," and "distract[ed] and confus[ed] the jury" in other ways.

It is well established that an expert witness may not provide a "net opinion."  Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 372 (2011).  "The net opinion rule is a 'corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data.'"  Townsend v. Pierre, 221 N.J. 36, 54 (2015) (alterations in original) (quoting Polzo v. Cty. of Essex, 196 N.J. 569, 583 (2008)).  The rule requires an expert to "'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'"  Id. at 54 (quoting Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013)).

Furthermore, an expert's opinion must have "objective support" and may not be based on a standard that is "personal."  Pomerantz, 207 N.J. at 373.  "In the context of legal malpractice, an expert must base his or her opinion on standards accepted by the legal community and not merely on the expert's

11

personally held views." <u>Carbis Sales, Inc. v. Eisenberg</u>, 397 N.J. Super. 64, 79 (App. Div. 2007) (citing <u>Kaplan v. Skoloff & Wolfe, P.C.</u>, 339 N.J. Super. 97, 103 (App. Div. 2001); <u>Stoeckel v. Twp. of Knowlton</u>, 387 N.J. Super. 1, 14 (App. Div. 2006)). In New Jersey, the Rules of Professional Conduct "set forth an appropriate standard of care by which to measure an attorney's conduct." <u>Kaplan</u>, 339 N.J. Super. at 103 (quoting <u>Baxt v. Liloia</u>, 281 N.J. Super. 50, 57 (App. Div. 1995)).

In this case, Wasserman was qualified as an expert in the field of professional legal malpractice and ethics. Plaintiff contends Wasserman failed to provide authority for his opinion that defendant did not owe him a duty under RPC 1.15 because plaintiff did not have a "bona fide claim" to the funds defendant had collected for Johnson.

The rule applies when a lawyer holds property of a client or another person. RPC 1.15(a). The rule states in pertinent part that

> [w]hen in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.
>
> [RPC 1.15(c).]

A-1581-16T1

The rule does not expressly use the term "bona fide," but Wasserman opined that the rule applies when a client or some third person has an ownership interest or legitimate claim to the property a lawyer possesses. Wasserman's understanding of the rule's requirement is supported by its plain language. He did not cite case law to support his interpretation, and this was an appropriate subject for cross-examination. However, Wasserman's testimony had sufficient support in RPC 1.15(c). It was not a net opinion.

Plaintiff further argues that Wasserman improperly testified as to plaintiff's state of mind, usurped the jury's role as fact-finder by addressing the ultimate issue of fact, made statements that were not supported by the evidence, provided factual and legal conclusions that had no basis in fact, and offered a highly prejudicial legal opinion. The record shows that plaintiff's trial counsel objected at various times during Wasserman's testimony.

The judge sustained some objections, directed the jury to disregard certain statements, and overruled other objections. On appeal, plaintiff contends the jury's verdict indicates that it gave great weight to Wasserman's testimony and this resulted in a miscarriage of justice.

"The admission or exclusion of expert testimony is committed to the sound discretion of the trial court." Townsend, 221 N.J. at 52 (citing State v.

13

Berry, 140 N.J. 280, 293 (1995)). An appellate court gives deference to the "trial court's decision to admit expert testimony, reviewing it against an abuse of discretion standard." Id. at 53 (quoting Pomerantz, 207 N.J. at 371–72). "Under that standard, an appellate court should not substitute its own judgment for that of the trial court, unless 'the trial court's ruling was so wide of the mark that a manifest denial of justice resulted.'" State v. Brown, 170 N.J. 138, 147 (2001) (quoting State v. Marrero, 148 N.J. 469, 484 (1997)).

Here, the trial judge carefully considered plaintiff's objections to Wasserman's testimony. As noted, the judge sustained some objections to Wasserman's testimony, overruled others, ordered the jury to disregard certain statements, and provided curative instructions when the judge deemed such instructions were required. Plaintiff's attorney had the opportunity to cross-examine Wasserman on statements that allegedly lacked factual support.

We are convinced from our review of the record that the judge's rulings on the objections to Wasserman's testimony were a reasonable exercise of discretion. Plaintiff had not established that the judge's rulings resulted in a "manifest denial of justice." Brown, 170 N.J. at 147 (quoting Marrero, 148 N.J. at 484).

B.  The Jury Instructions

Plaintiff also argues that the trial judge erred by failing to instruct the jury that defendant had a duty under RPC 1.15 to hold the proceeds from the sale of the property in his trust account pending resolution of all claims regarding those funds, including plaintiff's claim that the monies should be applied to pay off Johnson's mortgage loan.  He contends the judge's failure to instruct the jury in this manner resulted in a miscarriage of justice.

In considering allegations of error in jury instructions, "[t]he ultimate question is whether, taking the charge as a whole and reading it in context, the jury was misled or inadequately informed."  Mehlman v. Mobil Oil Corp, 153 N.J. 163, 194 (1998) (citing Navarro v. George Koch & Sons, Inc., 211 N.J. Super. 558, 570–71 (App. Div. 1986)).  Generally, "an appellate court will not disturb a jury's verdict . . . 'where the charge, considered as a whole, adequately conveys the law and is unlikely to confuse or mislead the jury, even though part of the charge, standing alone, might be incorrect.'"  Wade v. Kessler Inst., 172 N.J. 327, 341 (2002) (quoting Fischer v. Canario, 143 N.J. 235, 254 (1996)).

Here, the trial judge denied defendant's motion for involuntary dismissal or a judgment, and ruled that when viewing the facts in the light most favorable to plaintiff, the jury could find that defendant owed a duty to plaintiff as a non-

15

client, citing <u>Petrillo v. Bachenberg</u>, 139 N.J. 472 (1995), <u>Dynasty Bldg. Corp. v. Ackerman</u>, 376 N.J. Super. 280 (App. Div. 2005), and <u>Innes v. Marzano-Lesnevich</u>, 435 N.J. Super. 198 (2014), <u>aff'd as modified</u>, 224 N.J. 584 (2016).

The judge stated under <u>Petrillo</u>, a jury could find that defendant had a duty to plaintiff if defendant represented he was going to pay off Johnson's loan once he collected the funds. In addition, the judge ruled that under <u>Dynasty</u> and <u>Innes</u>, the jury could find that defendant had a duty to hold the monies pending resolution of plaintiff's claim. The judge also determined that based on the testimony and evidence presented, a jury could find that defendant breached both duties.

Thereafter, the judge charged the jury as follows:

> Typically a legal malpractice case requires an attorney client relationship between the plaintiff and defendant attorney. However, the uncontested evidence in this case shows that plaintiff was not a client of the defendant . . . . The law does permit a claim to be made by a non-client against an attorney in certain situations. The first situation is where the non-client relied on the attorney to take some action, or refrain from taking some action, on the part of that third party. And that such reliance was reasonable under the circumstances.
>
> In addition, a non-client plaintiff must establish that his or her reliance on the attorney was foreseeable to the attorney. That the attorney knew or should have known that the non-client is relying on him or her to

16

take certain action or refrain from certain actions in the attorney's professional capacity. In other words, [plaintiff] must establish, by a preponderance of the credible evidence, that it was reasonably foreseeable for [plaintiff] to rely upon the representations of [defendant], that he would pay off the mortgage and/or safeguard the funds to pay off the mortgage. If you find that plaintiff has established these facts by a preponderance of the evidence you should find defendant . . . guilty of malpractice and return the verdict for plaintiff.

An attorney may also be found liable to a third party when the attorney has reason to foresee the specific harm that occurred to that third person, such as the plaintiff in this case. In other words, [plaintiff] must show, by a preponderance of the evidence, that [defendant] knew or should've known that [plaintiff] had a claim to the money that [defendant] collected on behalf of John Johnson and that [defendant] improperly distributed the money to himself and others thereby damaging [plaintiff].

If you find that the defendant has complied with the standard of care[,] he is not liable to plaintiff regardless of the result. On the other hand, if you find that the defendant has departed from this standard of care resulting in injury or damage, then you should find defendant liable for his malpractice.

On appeal, plaintiff argues that the judge erred by asking the jury to decide the question of whether defendant owed plaintiff a duty with regard to the funds he collected for Johnson. We disagree. The judge's instruction made clear that the issue of whether defendant owed plaintiff a duty of care turned on material

17

issues of fact, specifically whether defendant represented he would pay off Johnson's loan with monies he collected, and whether defendant knew or had reason to know that plaintiff had a claim to the money that defendant collected on behalf of Johnson.  The judge's instructions were legally correct.

Plaintiff also takes issue with the first question of the verdict sheet provided to the jury, which he claims, "was even worse" than the jury charge. The question asked the jury to determine whether plaintiff had proven by a preponderance of credible evidence that defendant "deviated from accepted standards of legal practice with regard to the handling of the subject funds in his trust account in connection with plaintiff's legal malpractice claim?"  Plaintiff argues that there is nothing in this question that clarifies for the jury whether defendant had a legal duty to safeguard the mortgage payoff funds.

"A verdict sheet is intended for recordation of the jury's verdict and is not designed to supplement oral jury instructions."  State v. Gandhi, 201 N.J. 161, 196 (2010) (citing State v. Reese, 267 N.J. Super. 278, 287 (App. Div. 1993)). If the trial court's instructions "were sufficient to convey an understanding of the elements [of the cause of action] to the jury, and . . . the verdict sheet was not misleading, any error in the verdict sheet can be regarded as harmless."  Id. at 197 (citing Reese, 267 N.J. Super. at 287-89; State v. Vasquez, 265 N.J.

Super. 528, 547 (App. Div. 1993)). Generally, a verdict sheet is not grounds for reversal unless it was "misleading, confusing, or ambiguous." Ponzo v. Pelle, 166 N.J. 481, 490 (2001) (quoting Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 418 (1997)).

We note that the trial judge used the verdict sheet that plaintiff proposed. In any event, as we stated previously, the judge's charge was legally correct and the instructions properly guided the jury in addressing plaintiff's legal malpractice claim. The verdict sheet was not "misleading, confusing, or ambiguous." Ibid. (quoting Borden, 148 N.J. at 418).

We therefore conclude that the trial judge did not err by denying plaintiff's motion for a JNOV.

## III.

In his cross-appeal, defendant argues that the trial judge erred by denying his motion for involuntary dismissal of plaintiff's claims under Rule 4:37-2, or a judgment pursuant to Rule 4:40-1 because plaintiff failed to present sufficient evidence to establish he was damaged as a result of defendant's alleged wrongful acts or omissions. Defendant further argues that the judge erred by failing to grant his motion to strike Ambrosio's expert testimony as an impermissible net

opinion. In view of our decision affirming the trial court's order denying plaintiff's motion for a JNOV, these issues are moot.

Defendant also argues that the trial judge erred by denying his motion for sanctions under Rule 1:4-8. Defendant argues that plaintiff's motion for a JNOV lacked any basis in existing law or fact. He contends that at trial, plaintiff failed to present sufficient evidence to support his claims for legal malpractice and conversion. He argues that plaintiff should have been sanctioned for bringing the motion for a JNOV.

Rule 1:4-8 allows the court to sanction an attorney for asserting a frivolous claim on behalf of his or her client. United Hearts, L.L.C. v. Zahabian, 407 N.J. Super. 379, 389 (App. Div. 2009). A claim "is deemed frivolous when 'no rational argument can be advanced in its support, . . . it is not supported by any credible evidence, or it is completely untenable.'" First Atl. Fed. Credit Union v. Perez, 391 N.J. Super. 419, 432 (App. Div. 2007) (quoting Fagas v. Scott, 251 N.J. Super. 169, 190 (Law Div. 1991)).

Sanctions will not be awarded "[w]here a party has a reasonable and good faith belief in the" claims being asserted. See ibid. The trial court's ruling on a motion for sanctions under Rule 1:4-8 will not be disturbed unless shown to be

a mistaken exercise of discretion. <u>United Hearts</u>, 407 N.J. Super. at 390 (citing <u>Masone v. Levine</u>, 382 N.J. Super. 181, 193 (App. Div. 2005)).

In ruling on defendant's motion, the judge stated that plaintiff's attorney had pursued the matter on behalf of his client diligently and zealously. The judge found that plaintiff's motion for a JNOV was brought in good faith, based on counsel's interpretation of the evidence presented at trial.

The judge noted that defendant argued that the motion was frivolous because plaintiff's expert had not calculated damages, but the jury had not reached the issue of damages, and the jury's verdict had made this issue moot. The judge stated that she never addressed this issue and it would be inappropriate to do so in ruling on defendant's sanctions motion.

The judge found that plaintiff's alleged failure to establish damages was not a basis for imposing sanctions upon plaintiff's counsel for bringing the motion for a JNOV. We are convinced the record supports the judge's findings. We conclude the decision denying defendant's motion was not a mistaken exercise of discretion.

Accordingly, on the appeal, we affirm the trial court's order denying plaintiff's motion for a JNOV. On the cross-appeal, we affirm the trial court's

order denying defendant's motion for sanctions under <u>Rule</u> 1:4-8, and dismiss the other arguments raised as moot.

Affirmed on the appeal; affirmed in part and dismissed in part on the cross-appeal.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1581-16T1